Delmon HARBOUR, Administrator of the Estate of Ann L. Harbour, deceased, et. al, Appellee,

v.

MID–CONTINENT CASUALTY COMPANY, Appellant.

No. 66991.

Court of Appeals of Oklahoma, Division No. 3.

Dec. 1, 1987.

Rehearing Denied Dec. 29, 1987.

Certiorari Denied March 22, 1988.

David A. Poarch and William E. Woodson, Norman, for appellee.

Earl D. Mills, Robert B. Mills, and Lisa L. Gilbert, Oklahoma City, for appellant.

HANSEN, Presiding Judge:

Statewide Buildings, Inc. (Statewide) a Defendant below, but who is not a party to this appeal, installed a furnace in the residence of decedents of Delmon Harbour (Plaintiff/Appellee). Appellee sued Statewide for negligent installment of a furnace which allegedly caused the deaths of Plaintiffs' decedents on January 23, 1983, when the residence was destroyed by fire.

The trial court entered a default judgment against Statewide. On January 15, 1986 Appellee filed a garnishment action against Mid–Continent Casualty Company (Appellant) maintaining it had liability insurance covering Statewide in that the insurance policy was subject to garnishment to satisfy the default judgment. Appellant filed an affidavit explaining it had no property which could be the subject of a garnishment action and was in no manner liable as garnishee. Both parties filed a cross-motion for summary judgment wherein the following facts are undisputed: On June 20, 1979, Appellant underwrote a comprehensive general liability insurance policy naming as its insurer Statewide. The policy had an expiration date of June 20, 1980. The fire or occurrence giving rise to this action occurred on or about January 23, 1983.

The policy clearly states the company will pay damages for:

A. Bodily injury or

B. Property damage

to which this insurance applies caused by an occurrence. The policy defines "occurrence" as an "accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

"Property damage" is defined in the policy as "a physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom...." Likewise "bodily injury" means "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."

Although Appellant argued there was no coverage under the policy because the deaths and the property damage did not occur until after the expiration of the policy, Appellee maintained the policy was ambiguous and susceptible of two constructions, one of which would permit coverage. The trial court overruled Appellant's motion for summary judgment and sustained Appellee's motion for summary judgment. Appellant appeals this ruling.

█ For its first proposition of error, Appellant contends Appellee failed to comply with District Court Rule 13, 12 O.S. Ch. 2, App. which provides in part that in responding to the uncontroverted facts set forth in a motion for summary judgment, "[t]he adverse party shall set forth and number each specific material fact which is claimed in controversy...." Appellant further observes that in his response Appellee designated as his only uncontroverted fact that "[O]n June 20, 1979, Insurer issued a policy of insurance attached as Exhibit E to its Brief in Support of Motion for Summary Judgment." Appellee, however, readily admits seven (7) of eight (8) of Appellant's uncontroverted facts. The eighth of Appellant's uncontroverted facts [1] is a conclusory fact and need not be controverted by Appellee in as much as it could not have been used to support Appellant's motion for summary judgment. Besides, this eighth uncontroverted fact was expressly disputed throughout Appellee's response. Appellant's contention is without merit.

Next, Appellant contends the trial court erred in ruling the insurance policy is ambiguous. It maintains the policy is, in fact, unambiguous and should be interpreted according to its plain and ordinary meaning.

On the other hand, Appellee submits the above-mentioned language of the policy is "circular" in that the term "occurrence" which incorporates both the definition of "bodily injury" and "property damage" circuitously incorporates the very term it seeks to define—"occurrence."

We disagree. It is well settled that where the terms of an insurance contract are clear, consistent, and unambiguous, no forced or strained construction should be indulged to give affect to the policy. *Pitchford v. Electrical Workers Ben. Ass'n*, 189 Okl. 84, 113 P.2d 591 (1941). Because the language of the policy is not ambiguous, there is no room for construction.[2]

█ Appellee further argues the "Completed Operations Hazard" endorsement allows coverage for decedents' deaths and for the property damage which occurred after expiration of the policy. A Completed Operations Hazard endorsement insures a contractor against accidents which might

---

1. Appellant's eighth uncontroverted fact provides "the occurrence giving rise to this lawsuit occurred after the expiration of said insurance policy; and therefore, the Garnishee, Mid-Continent Casualty Company, is not liable, in any manner, to the Plaintiffs herein."

2. Appellees cite *Maryland Casualty Co. v. Morrison*, 151 F.2d 772 (10th Cir.1945) for the proposition that "[i]n determining whether the insur-ance policy is susceptible of multiple constructions, the test is whether an ordinary business man when making ordinary business contracts could reasonably interpret the policy in that manner." However, this Court does not reach the process of construction of the contract because the language of the policy in the instant case is unambiguous.

occur during the policy period but after completion of the project, at which point general liability no longer provides coverage. *Acorn Ponds, Inc. v. Hartford Insurance Company,* 105 A.D.2d 723, 481 N.Y.S.2d 392 (1984).

■ In the policy " 'Completed Operations Hazard' includes bodily injury and property damages arising out of operations ... but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured."

The boldfaced terms "bodily injury" and "property damage" are both defined to include the limiting language "during the policy period." Therefore, in reading the policy as a whole, this Court finds that property damage and bodily injury must occur "during the policy period." Moreover, "[a]n insured would expect to find a time limitation expressed in the policy, and would not reasonably assume, after reading only the completed operations definition, that he could cease paying premiums but enjoy completed operations coverage

indefinitely. *Acorn Ponds, Inc. v. Hartford Insurance Company, supra.*[3]

Clearly, liability under the Completed Operations Hazard endorsement is restricted to bodily injury or property damage arising out of an accident occurring during the policy period. Thus, no coverage is afforded through this policy.

REVERSED AND REMANDED TO THE TRIAL COURT WITH INSTRUCTIONS TO ENTER AN ORDER OVERRULING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND SUSTAINING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

HUNTER, J. concurs.

BAILEY, J., not participating.

3. Although Appellee cites *Wixom Brothers Co. v. Truck Insurance Exchange,* 435 So.2d 1231 (Ala. 1983) for the proposition that public policy mandates coverage for the insured, we note the *Wixom Brothers* case was expressly overruled in *U.S. Fidelity & Guaranty Co. v. Warwick Development Co., Inc.,* 446 So.2d 1021 (Ala.1984) wherein the Alabama Supreme Court in denying coverage held that "as a general rule the time of an 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time the complaining party was actually damaged."