Richard L. CAMPBELL, Barbara Ann Campbell, Tammie Campbell, Jennifer Campbell, by her next friend and father, Richard L. Campbell, Plaintiffs,

v.

MID-AMERICA CONSTRUCTION COMPANY OF IOWA, and Lifetime Fence Company, Defendants.

MID-AMERICA CONSTRUCTION COMPANY OF IOWA, Third–Party Plaintiff,

v.

Larry GRAF d/b/a Hawkeye Erection Company, Third–Party Defendant.

Larry GRAF d/b/a Hawkeye Erection Company, Third–Party Plaintiff–Appellant,

v.

Max HOLLANDER d/b/a Hollander Insurance, Hollander Insurance, Incorporated, and Lifetime Fence Company, Third–Party Defendants–Appellees.

Max HOLLANDER d/b/a Hollander Insurance, Hollander Insurance, Incorporated, Third–Party Plaintiff,

v.

ALLIED GENERAL AGENCY COMPANY, Third–Party Defendant.

No. 96–0398.

Court of Appeals of Iowa.

April 30, 1997.

Davis L. Foster, Iowa City, for appellant.

John W. Hayek and David C. Pulliam of Hayek, Hayek & Brown, L.L.P., Iowa City, for appellee Lifetime Fence Co.

Timothy D. Roberts of Anderson, Roberts & Porth, Burlington, for Max Hollander.

Heard by SACKETT, P.J., and CADY, and VOGEL, JJ.

CADY, Judge.

This is an appeal from an order by the district court granting summary judgment in an action for contribution between two subcontractors. It concludes a long history of derivative litigation over an injury sustained by a construction worker. We affirm the district court order.

Richard Campbell was injured on June 28, 1988 while working on the construction of the University of Iowa Hospitals and Clinic Psychiatric Pavilion in Iowa City. He was employed by Larry Graf, who operated a business called Hawkeye Erection Co. Graf was a subcontractor on the construction project. Mid–America Construction Company of Iowa was the general contractor. Campbell was injured after he climbed a fence to help guide a load of rebar iron being moved by a crane, and fell.

The fence enclosed the construction site. It was erected by Lifetime Fence Company. Lifetime had entered into a contract with Mid–America to erect the fence. Lifetime completed its work under the contract in March 1988, two months prior to the injury to Campbell.

Campbell sued Mid–America and Lifetime to recover for his injuries. Mid–America settled with Campbell prior to trial for $200,-000. A jury subsequently found Lifetime faultless, and allocated 25% fault to Mid–America and 75% to Campbell.

Mid-America successfully enforced the indemnification clause contained in its subcontract with Graf. Graf then brought an action against Lifetime for contribution based on

their common indemnification obligation to Mid–America. The district court granted Lifetime's motion for summary judgment. It found as a matter of law Lifetime had no obligation under its indemnification agreement with Mid–America for the injuries to Campbell because the "accident did not arise from or by reason of any work that Lifetime Fence Company did under the terms of its contract."

## I. Standard of Review

We review a ruling by the district court on a motion for summary judgment for errors at law. *Marcus v. Young*, 538 N.W.2d 285, 287–88 (Iowa 1995). We will affirm the grant of a motion for summary judgment if no issue of material fact exists and the movant is entitled to judgment as a matter of law. *Id.*

## II. Indemnification

■■■ Although the disputed claim in this case is for contribution, it rests on the contractual obligations flowing from Graf's and Lifetime's contracts of indemnity with Mid–America. This is because our law generally recognizes that two subcontractors who share common liability to a general contractor under indemnification contracts should contribute equally to discharge that obligation. *Herter v. Ringland–Johnson–Crowley Co.*, 492 N.W.2d 672, 674 (Iowa 1992). Thus, the dispositive question we confront is whether the subcontract between Lifetime and Mid–America required Lifetime to indemnity Mid–America for an injury which occurred after the work required under the subcontract had been completed. Graf argues the contractual duty to indemnity should continue as long as Mid–America is exposed to liability for injuries related to the fence constructed by Lifetime.

The indemnification language at the heart of this case comes from a standard form subcontract utilized by many general contractors in Iowa and other states. *See R.E.M. IV v. Robert F. Ackermann & Assoc.*, 313 N.W.2d 431, 432–33 (Minn.1981) (Associated General Contractors Standard Subcontract Agreement). Although our appellate courts have not had an opportunity to consider the precise issue we face in this case, we have confronted the identical, or near identi-cal, language in prior cases. *See Herter*, 492 N.W.2d at 673. The indemnification clause is found in paragraph seven of the subcontract and provides:

7. The Subcontractor agrees to assume the entire responsibility and liability for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontract or occurring or resulting from the use by the Subcontractor, his agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Subcontractor or third parties, and the Subcontractor agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph and the Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph.

The scope of the obligation to indemnity is specifically confined to damages and injuries "arising out of ..., resulting from or in any manner connected with, the execution of the work provided for in this Subcontract...." Our task is to decide if this language applies to damages and injuries which occur after the subcontractor has completed its work.

■■■ We begin with the principle that indemnity agreements are held to the same standards of construction as other contracts. *Bunce v. Skyline Harvestore Systems Inc.*, 348 N.W.2d 248, 250 (Iowa 1984). Our goal is to give effect to the intent of the parties, which is found from the language of the contract except in the face of an ambiguity. *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 862–63 (Iowa 1991). The construction or legal effect of a contract is always a matter of law to be decided by the court, as is the interpretation or meaning of contractual words unless it

depends on extrinsic evidence or a choice among reasonable inferences from extrinsic evidence. *Connie's Const. v. Fireman's Fund Ins.*, 227 N.W.2d 207, 210 (Iowa 1975). In this case, the scope of the indemnity is an issue of law for the court to resolve. There is no extrinsic evidence to consider.

We have previously recognized that indemnification between a subcontractor and a general contractor derived from contractual language similar to the indemnification clause in this case requires some relationship between the work done by the subcontractor under the subcontract and the injury. *See Ward v. Loomis Bros., Inc.*, 532 N.W.2d 807, 813 (Iowa App.1995) (no indemnification where only involvement subcontractor had with the injury was the unauthorized use of its equipment). In our effort to now define the extent of this connection or relationship, we not only consider the precise indemnification language, but all the language in the indemnification clause. Contracts must be interpreted as a whole to gain a true perspective of the intention of the parties. *See Fuel & Minerals, Inc.*, 471 N.W.2d at 863 (contract must be interpreted as a whole).

The precise indemnification language in this case does not reveal a clear intention of the parties.[1] However, we find it significant that the indemnification clause concludes by requiring the subcontractor to "obtain, maintain, and pay for such general liability insurance coverage as will insure the provisions of this paragraph." General liability insurance normally does not provide coverage for a contractor after the project is completed. *See Harbour v. Mid–Continent Cas. Co.*, 752 P.2d 258, 260–61 (Okla.App.1987). Instead, a completed operations hazard endorsement is necessary to insure a contractor against accidents which occur after the completion of a project. *Id.; see* 7A John Alan Berdaled, *Appleman, Insurance Law and Practice* § 4508.03, at 388–90 (1979). Thus, we believe the indemnification language imposing an obligation on the subcontractor to carry only general liability insurance and not completed operations insurance persuasively re-veals an intention to limit indemnification while the work is in progress. It would be inconsistent and unreasonable to impose a duty to maintain insurance to cover an obligation for indemnity which is more narrow than the scope of the indemnity. An interpretation of a contract which gives a reasonable and effective meaning to all terms is preferred to one which leaves a part unreasonable. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 26 (Iowa 1978).

This reasoning was followed by the Minnesota Supreme Court in *R.E.M. IV*, when presented with the same issue involving the same contractual language. *R.E.M.IV*, 313 N.W.2d at 434–35. After recognizing the distinction between general liability insurance and completed operations insurance, the court concluded that the limitation to maintain general liability insurance revealed an "intent of the drafters of the subcontract to require indemnity only while the work was in progress." *Id.* at 435. The court further stated:

> The subcontractor signing the standard form agreement drafted by the Associated General Contractors intends only to provide protection for the general contractor while the work of the subcontract is being performed, and certainly does not anticipate long term contractual liability for the general contractor's own negligence in the future after the subcontract is completed. The subcontractor does not intend to indemnify the contractor forever. Logic requires the conclusion that only damage occurring during the performance of the work of the subcontract is within the intended coverage of the indemnity provision.

*Id.* We adopt this reasoning as providing a sound resolution in this case.

We also agree a subcontractor does not anticipate a long term contractual liability for a general contractor's negligence after the subcontract has been completed and the sub-

---

1. The thrust of the arguments by the parties focused on the language requiring indemnity for injuries arising from the "execution of the work provided for in this subcontract." Lifetime ar-gued this meant there was no obligation once the contract was executed or completed. Graf argued no such limitation was expressed or implied.

contractor has left the job site. *Id.* It is logical to interpret the indemnification provision to limit its coverage to damage or injury which occurs during the performance of the work under the subcontract.[2] *Id.*

### III. Conclusion

Considering the entirety of the subcontract, we conclude the indemnification provision does not apply to injuries sustained after the subcontract has been completed. We have considered all issues raised by Graf and affirm the district court.

**AFFIRMED.**

---

**2.** We recognize the subcontract does not totally relieve a subcontractor from liability simply because the work has been completed. Paragraph 6 of the subcontract requires a subcontractor to hold the contractor harmless from losses or damages "occasioned by the failure of the subcontractor to carry out the provisions of the sub- contract unless such failure results from causes beyond the control of the subcontractor." This paragraph, however, does not impact Graf's claim for contribution. Lifetime was found faultless. Graf's claim is not based on Lifetime's breach of paragraph 6, but its contractual duty of indemnification under paragraph 7.