**MODERN PIPING, INC., Appellant,**

v.

**BLACKHAWK AUTOMATIC SPRINKLERS, INC., Appellee.**

No. 96–1878.

Supreme Court of Iowa.

July 29, 1998.

Rehearing Denied Oct. 5, 1998.

Mark J. Herzberger and Randall D. Armentrout of Moyer & Bergman, P.L.C., Cedar Rapids, for appellant.

Craig A. Levien and Jean Dickson Feeney of Betty, Neuman & McMahon, L.L.P., Davenport, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This case involves a claim of indemnity by plaintiff subcontractor against defendant subcontractor who installed a sprinkler system. Damage occurred after the work was completed when sprinkler pipes burst. A jury returned a verdict in favor of the defendant subcontractor. The trial court denied plaintiff's motion for judgment notwithstanding the verdict. Although the trial court erred by submitting the case for jury determination, we affirm on a separate issue of law.

## I. Background Facts and Proceedings

In 1986, the Veterans Administration awarded a contract to M.A. Mortenson, a general contractor, to construct an addition to the Veterans Administration Medical Center in Iowa City. Mortenson entered into a subcontract with the plaintiff, Modern Piping, Inc., to install the piping for the project. Modern Piping then entered into a subcontract with the defendant, Blackhawk Automatic Sprinklers, Inc., to install a sprinkler system in the addition. The Veterans Administration gave its final acceptance and took possession of the addition on August 29, 1990. On March 5, 1991, sprinkler pipes in a sound room in the addition erupted, resulting in damage to property and equipment. Mortenson expended $30,571 to repair the

damages and replace the damaged equipment. It originally sought to collect the amount expended from Blackhawk but was unsuccessful because it had no direct contractual relationship with Blackhawk. Therefore, Mortenson withheld the amount from the retainage due Modern Piping under the parties' contract.

Modern Piping then requested that Blackhawk indemnify it for the amount withheld pursuant to an indemnity clause in the parties' contract. Blackhawk refused. On March 15, 1995, Modern Piping filed a petition claiming Blackhawk breached the indemnity and warranty provisions of the parties' contract by failing to pay the requested amount. On August 15, 1995, Modern Piping filed a motion for summary judgment, arguing that the language of the indemnity clause entitled it to judgment as a matter of law. The court denied the motion on the ground that "reasonable minds could differ in their opinions as to the cause of the leaking sprinkler system making summary judgment on this issue improper."

On September 18, 1996, five days before trial was to begin, Modern Piping filed a motion to stay the proceedings and compel arbitration pursuant to a provision in the contract and Iowa Code section 679A.2 (1995). The court denied the motion in an oral ruling on September 20 and filed a written order confirming the ruling on September 25. The matter proceeded to trial. The district court denied Modern Piping's motion for directed verdict. The jury found in favor of Blackhawk. Modern Piping filed a notice of appeal on October 18 from the district court's denial of its motion to compel arbitration. It filed a second notice of appeal on December 6 after the court denied its post-trial motion for judgment notwithstanding the verdict or new trial.

## II.   Issues on Appeal

On appeal, Modern Piping contends the district court erred as follows: (1) in denying its motion to stay the proceedings and compel arbitration; (2) by submitting the legal question of contract construction and interpretation to the jury; and (3) in instructing the jury on negligence. It requests that we either order the parties to arbitrate, grant the motion for judgment notwithstanding the verdict, or order a new trial on all issues.

## III.   Discussion

### A.   Denial of Motion to Compel Arbitration

In its first allegation of error, Modern Piping contends the district court erred in denying its motion to compel arbitration. Modern Piping argues that the court was required to order arbitration because it established the required elements of Iowa Code section 679A.2, governing proceedings to compel or stay arbitration. In response, Blackhawk maintains that Modern Piping waived its right to arbitration by substantially invoking the litigation process. It argues that Modern Piping's conduct and activity during the eighteenth-month period between filing the petition and filing the motion to compel arbitration "was wholly inconsistent with the right to arbitration *and* was prejudicial to Blackhawk." In addition, Blackhawk asserts the common-law doctrine of election of remedies, arguing that Modern Piping elected its right to proceed via civil litigation instead of arbitration.

### 1.   Iowa's Arbitration Statute

Iowa Code chapter 679 governs arbitration procedures. Section 679A.1(2) governs the validity of arbitration agreements found in contract provisions addressing future controversies between the parties to the contract:

A provision in a written contract to submit to arbitration a future controversy arising between the parties is valid, enforceable, and irrevocable unless grounds exist at law or in equity for the revocation of the contract. This subsection shall not apply to any of the following:

*a.*   A contract of adhesion.

*b.*   A contract between employers and employees.

*c.*   Unless otherwise provided in a separate writing executed by all parties to the contract, any claim sounding in tort whether or not involving a breach of contract.

Section 679A.2 addresses proceedings to compel or stay arbitration:

1. On application of a party showing an agreement described in section 679A.1 and the opposing party's refusal to arbitrate, the district court shall order the parties to proceed with arbitration. However, if the opposing party denies the existence of a valid and enforceable agreement to arbitrate, the district court shall proceed to the determination of the issue and shall order arbitration if a valid and enforceable agreement is found to exist. If no such agreement exists, the court shall deny the application.

### 2. Whether an Arbitration Clause Can Be Waived

The first issue regarding waiver of arbitration is whether Modern Piping had an absolute right under Iowa Code section 679A.2 to arbitration and a stay of the pending judicial proceedings. The interpretation of section 679A.2 is a question of law, and we review the district court's interpretation for correction of errors of law. Iowa R.App. P. 4. Modern Piping contends that as long as the contract at issue contains an arbitration clause as provided in section 679A.1 and Blackhawk refused to arbitrate, the district court did not have any discretion under section 679A.2 to deny Modern Piping's motion for an order to stay proceedings and compel arbitration. We disagree.

We have previously recognized that circumstances may exist under which a party may be deemed to have waived a contractual right to arbitration. Most recently, in *Clinton National Bank v. Kirk Gross Co.*, 559 N.W.2d 282 (Iowa 1997), we considered whether the filing of a mechanic's lien constitutes waiver of the right to request arbitration under a contract provision. In *Clinton National Bank*, the parties entered into a contract for the remodeling of a bank. The contract included an arbitration clause covering "all disputes" between the parties. A dispute arose over the quality of carpet installed, and the bank refused to pay the remaining amount due on the contract. The contractor filed a mechanic's lien, and shortly thereafter the bank sued, claiming the con-

tractor breached its warranty by installing substandard carpeting. The contractor filed a motion to dismiss the warranty suit on the ground that the arbitration agreement was mandatory and took priority over the suit. It also withdrew its mechanic's lien filing. In its resistance to the motion to dismiss, the bank argued the contractor had waived its right to arbitration by filing the mechanic's lien. The district court granted the contractor's motion to dismiss. *Clinton Nat'l Bank*, 559 N.W.2d at 283.

In considering the waiver issue on appeal, we found that because arbitration is a favored method of settling civil disputes, "evidence of an alleged waiver must be compelling, especially in view of the fact that section 679A.1, which identifies certain circumstances under which arbitration will not be recognized, does not even mention waiver." *Id.* at 284. After considering cases from other jurisdictions regarding the actions necessary to constitute waiver of arbitration, we concluded that the contractor's mere filing of a mechanic's lien did not constitute court action, and therefore did not establish waiver of the right to arbitration. *Id.* Despite our conclusion that the contractor's actions in this case did not rise to the level of a waiver, we implicitly recognized that waiver of an arbitration provision is possible even in light of the arguably mandatory language of section 679A.2.

In *Des Moines Asphalt & Paving Co. v. Colcon Industries Corp.*, 500 N.W.2d 70 (Iowa 1993), we considered the issue of timeliness in connection with a motion to compel arbitration. In that case, Colcon, a general contractor, was sued by Des Moines Asphalt, a subcontractor who had not been paid by Colcon because the owner of the property refused to make full payment for the work, alleging the paving had been completed improperly. Colcon filed a cross-claim against the property owner. The owner's answer contained an affirmative defense alleging the dispute was subject to an irrevocable arbitration clause in the parties' contract. Shortly thereafter, the owner filed a motion to stay the proceedings and compel arbitration. The district court denied the motion six weeks

later on the ground it was untimely. *Des Moines Asphalt,* 500 N.W.2d at 71.

After confirming the validity of the arbitration clause as required by section 679A.1, we found the district court had abused its discretion under section 679A.2 in denying the property owner's motion to compel arbitration. The length of the delay between the time the general contractor served the property owner with notice of the suit and the filing of the motion to compel arbitration was approximately two months. We concluded that, as a matter of law, the property owner acted in a timely fashion and had not waived its right to arbitration under the contract, at least as far as that right was controlled by section 679A.2. *Id.* at 73.

■ Despite the focus on timeliness, our holding in *Des Moines Asphalt* clearly addresses the ultimate issue of waiver of arbitration rights. If we had concluded that the property owner had not filed its motion to compel in a timely fashion, its right to arbitration would have been waived. Therefore, despite the seemingly mandatory language found in section 679A.2, our decisions in both *Des Moines Asphalt* and *Clinton National Bank* acknowledge that a contractual right to arbitration can be waived by the conduct of the party desiring arbitration.

As an alternative argument, Modern Piping contends that the issue of waiver should be decided by the arbitrator. In *Des Moines Asphalt,* where we found an abuse of discretion by the trial court, we recognized that if the contract so provides the arbitrator is allowed to make this initial decision regarding timeliness of the request for arbitration. Modern Piping garners no benefit from this authority, however, since its contract with Blackhawk contains no such provision.

### 3. Whether Modern Piping Waived Its Contractual Right to Arbitration

■ Having confirmed that the right to arbitration under Iowa Code section 679A.2 may be waived, we now consider whether the district court erred in denying Modern Piping's motion to compel arbitration. We review the district court's denial of the motion for an abuse of discretion. *Id.* The district court's written order denying the motion is only a one-line statement, which gives no reason for the decision. Nevertheless, we may affirm the district court on any proper basis which appears in the record. *See Citizens First Nat'l Bank v. Hoyt,* 297 N.W.2d 329, 332 (Iowa 1980).

We first recognize, as we have in numerous prior cases, that our law favors arbitration. *Postville Community Sch. Dist. v. Billmeyer,* 548 N.W.2d 558, 560 (Iowa 1996). We also acknowledge the underlying purpose of arbitration as a " 'means of settling civil disputes without the expense and delay of litigation.' " *Litchsinn v. American Interins. Exch.,* 287 N.W.2d 156, 160 (Iowa 1980) (quoting *Hawkins/Korshoj v. State Bd. of Regents,* 255 N.W.2d 124, 127 (Iowa 1977)). It is with these principles in mind that we turn to a resolution of the waiver issue.

In *Clinton National Bank,* we cited with approval and utilized a test for waiver of arbitration set forth in a South Dakota case. In *Tjeerdsma v. Global Steel Buildings, Inc.,* 466 N.W.2d 643, 645 (S.D.1991), the South Dakota Supreme Court stated as follows:

An arbitration agreement may be waived. There is an overriding policy favoring arbitration, and the waiver of that right is not to be lightly inferred. The mere delay in seeking a stay of litigation with some resultant prejudice to a party cannot be deemed a waiver. The essential test for waiver of arbitration requires conduct or activity inconsistent with the right to arbitration *and* prejudice to the party claiming waiver.

The issue of whether one has waived his right to arbitrate turns on the significance of the action taken in a judicial forum. The issue is one for the court to decide. Delay and the extent of the moving party's trial-oriented activity are material factors in assessing a claim of prejudice. Prejudice may result from lost evidence, duplication of efforts, or the use of discovery methods unavailable in arbitration.

(Citations omitted.) The court in *Tjeerdsma* was interpreting the Federal Arbitration Act, which, like Iowa Code section 679A.2, uses mandatory language. *Compare* Iowa Code § 679A.2, *with* 9 U.S.C. § 3 (1988) (providing

that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had").

In *Tjeerdsma*, the party requesting arbitration failed to assert the right to arbitration in its answer, took a deposition, filed interrogatories and requests for admission and otherwise participated in the litigation process. *Tjeerdsma*, 466 N.W.2d at 645. The court concluded that this conduct was inconsistent with the right to arbitration and was prejudicial to the opposing party. Therefore, the court affirmed the district court's holding that the defendants waived their right to arbitration under the parties' agreement. *Id.*

Other jurisdictions have utilized similar inquiries in considering waiver of arbitration. In *Meyer v. Classified Insurance Corp.*, 179 Wis.2d 386, 507 N.W.2d 149, 154–55 (Ct.App. 1993), the Wisconsin Court of Appeals concluded that the defendant's conduct "was sufficient to constitute waiver." The court noted that "the determination of waiver must include an overall evaluation of the applicant's involvement and conduct up to the time of request." *Id.* at 397, 507 N.W.2d at 154. The facts in *Meyer* are similar to the case at bar. In *Meyer*, the defendant-insurance company filed a motion to compel arbitration only one week prior to the trial date and had participated in the litigation during the pendency of the lawsuit. In affirming the trial court's denial of the motion, the court noted that "the trial court properly considered the merits of referring the matter to arbitration versus proceeding with the trial and the prejudice to the [plaintiffs] resulting from further delay." *Id.*

In *Joba Construction Co. v. Monroe County Drain Commissioner*, 150 Mich.App. 173, 388 N.W.2d 251 (1986), the court concluded that the party seeking arbitration had waived the right to arbitration by its conduct. The court noted that the party did not raise arbitration as a defense and was involved in discovery beyond answering interrogatories submitted by opposing counsel. The court noted that "[p]ursuing discovery is regarded as being inconsistent with demanding arbitration, since discovery is not generally available in arbitration." *Joba Constr. Co.*, 388 N.W.2d at 254.

Based on the decisions of other jurisdictions discussed above and our own decisions in *Clinton National Bank* and *Des Moines Asphalt*, we conclude that Modern Piping waived its right to arbitration. Its conduct during the eighteen-month period from the filing of the petition to the date of the motion to compel arbitration was clearly inconsistent with asserting such a right. Not only did Modern Piping file a claim in district court, which is in itself inconsistent with asserting a right to arbitration, but it utilized discovery methods that are unavailable in arbitration (interrogatories and requests for admission), *see* Iowa Code § 679A.7, and otherwise fully availed itself of the litigation process. Moreover, the eighteen-month delay between the filing of the petition and the motion to compel arbitration, along with the fact that the motion was made only five days before trial was to commence, militate against allowing Modern Piping to proceed with arbitration. Modern Piping's actions were clearly more indicative of a waiver of arbitration than the two-month delay in requesting arbitration in *Des Moines Asphalt* and the filing of a mechanic's lien in *Clinton National Bank*. Therefore, those cases, while helpful in their analysis, are not factually controlling.

Modern Piping's conduct up to the point of the motion to compel arbitration was wholly inconsistent with asserting a right to arbitration. In addition, Modern Piping's conduct prejudiced Blackhawk by forcing it to participate in discovery and requiring it to spend money and expend other resources in preparation for trial which might not have been necessary in arbitration. With a nod to judicial economy and the underlying purpose of arbitration, the Wisconsin Court of Appeals aptly summarized the reasons for not granting a motion to compel arbitration in *Meyer*:

> When parties are fully prepared for trial and the trial is scheduled to begin in a matter of days, arbitration may lose its value as an alternative to litigation. Conduct which allows an action to proceed to a point where the purpose of arbitration—to obtain a speedy, inexpensive and final resolution of disputes—is frustrated is con-

duct that estops a party from claiming a right to a stay of the proceedings and referral for contractual arbitration.

*Meyer,* 179 Wis.2d at 399, 507 N.W.2d at 155.

Modern Piping's conduct in this case frustrated the purpose of arbitration, was inconsistent with a desire to pursue arbitration and prejudiced Blackhawk. For those reasons we affirm the district court's denial of Modern Piping's motion to stay the proceedings and compel arbitration. Based on our resolution of the waiver issue, we need not consider Blackhawk's alternative argument of election of remedies.

### B. Motion for Judgment Notwithstanding the Verdict or New Trial

Following the jury's adverse verdict, Modern Piping filed a motion for judgment notwithstanding the verdict or a new trial. The district court denied the motion. In its ruling, the court noted that because of the length of time between completion of the work and the sprinkler leak and the existence of conflicting evidence regarding the cause of the leak, a question of fact was raised for the jury to determine whether the leak arose "in whole or in part from or in any manner connected with" Blackhawk's work under the subcontract. Therefore, the court concluded, the issue could not be determined as a matter of law. The court also declined to order a new trial based on Modern Piping's allegations of improper argument by Blackhawk's counsel and submission of improper jury instructions and verdict forms.

We review a district court's grant or denial of a motion for judgment notwithstanding the verdict for the correction of errors at law. *Bell v. Community Ambulance Serv. Agency,* 579 N.W.2d 330, 333 (Iowa 1998). A motion for judgment notwithstanding the verdict must stand or fall on the grounds raised in the motion for directed verdict. *Id.* In reviewing the propriety of the district court's ruling, we view the evidence in the light most favorable to the party against whom the motion is directed, in this case Blackhawk. *Iowa Mut. Ins. Co. v. McCarthy,* 572 N.W.2d 537, 541 (Iowa 1997). We consider every legitimate inference that may fairly and reasonably be deduced from the evidence. *Id.*

Our sole inquiry is whether there was sufficient evidence presented to justify submitting the case to the jury. If reasonable minds could differ on the issue, it was proper for the district court to submit it. *Federal Land Bank v. Woods,* 480 N.W.2d 61, 65 (Iowa 1992).

In its petition, Modern Piping alleged that Blackhawk had breached the parties' contract by refusing to indemnify it against Mortenson's claim and by failing to comply with the warranty provision of the contract. The provisions at issue state as follows:

INDEMNITY. The Subcontractor [Blackhawk] shall defend and indemnify Modern Piping, Inc. and the Owner [Mortenson] and their agents and employees from and against all claims, damages, losses and expenses (including without limitation legal fees and disbursements) arising in whole or in part out of or relating to the Subcontractor's Work, including without limitation the failure or alleged failure of the Subcontractor to perform any obligation under this Subcontract. The Subcontractor agrees to assume entire responsibility and liability for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of or resulting in whole or in part from or in any manner connected with, the execution of the Work under this Subcontract or occurring or resulting in whole or in part from the use by the Subcontractor, its agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by Modern Piping, Inc., the Subcontractor or third parties; . . . . The Subcontractor's obligation under this paragraph expressly excludes only total liability created by the sole and exclusive negligence of Modern Piping, Inc. or the Owner. The Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph and other contractual indemnities assumed by the Subcontractor in this Subcontract.

WARRANTY. The Subcontractor warrants and guarantees that it shall perform all Work in a skillful manner, and shall

furnish new materials and equipment of good quality, fit for the purpose intended and free from defects and in compliance with all requirements of the Contract Documents; that without cost to Modern or the Owner it shall promptly correct improper or defective Work, materials or equipment and other work affected by such correction which may be discovered within one year from the date of final acceptance of the Project as a whole by the Owner. With respect to the corrected Work the one-year correction period shall run from the time of last correction. Without limitation by the foregoing, the Subcontractor shall provide any broader guarantee or such longer guarantee period as required by the other Contract Documents. Required Equipment and System warranty documents and as-built drawings shall be delivered to Modern Piping, Inc. within 30 days of completion of the Work.

### 1. Indemnity Clause

Modern Piping contends the district court erred in submitting the legal question of the contract's construction and interpretation to the jury. It further argues that under the language of the indemnity clause, it is not required to prove that Blackhawk was the cause of the leak in the sprinkler system to prevail. Blackhawk maintains the court properly submitted the issue of whether it breached the indemnity agreement to the jury and that Blackhawk's installation of the sprinkler system did not trigger the duty to indemnify as a matter of law.

We must first determine whether the district court properly submitted the indemnity issue to the jury. We review the indemnity provision of this contract in accordance with the same principles we utilize in reviewing other contracts. Review of a contract typically involves both interpretation and construction. Interpretation of a contract requires a court to determine the meaning of contractual words. *LeMars Mut. Ins. Co. v. Joffer,* 574 N.W.2d 303, 306 (Iowa 1998). Interpretation is reviewed by the court as a legal issue unless it is dependent on extrinsic evidence. *McKenzie v. Eastern Iowa Tire, Inc.,* 448 N.W.2d 464, 466 (Iowa 1989).

In prior cases involving indemnity provisions, our court and the court of appeals have often concluded that resolution of the issue should be by the court as a matter of law. *See Employers Mut. Cas. Co. v. Chicago & N.W. Transp. Co.,* 521 N.W.2d 692, 694 (Iowa 1994) (noting that district court was correct in interpreting phrase at issue in indemnity provision instead of submitting issue to jury as no extrinsic evidence bearing on the language in question was submitted to the court); *Evans v. Howard R. Green Co.,* 231 N.W.2d 907, 916 (Iowa 1975) (finding that question of architect's right to indemnity against the contractor "was a matter of construction and clearly one which should have been decided by the court and not submitted to the jury"); *Stowe v. Wood,* 199 N.W.2d 323, 327 (Iowa 1972) ("The general rule is that issues of fact ... should be submitted to the jury with the court then determining the right to indemnity or contribution based upon the findings made by the jury."); *Campbell v. Mid–America Constr. Co.,* 567 N.W.2d 667, 670 (Iowa App.1997) (concluding that, because there was no extrinsic evidence to consider, the scope of the indemnity provision was an issue of law for the court to resolve).

It is clear from the instructions submitted to the jury and the court's comments to the attorneys during a motion hearing prior to the submission of the case that the court submitted the issue of the contract's construction and interpretation to the jury. In its oral ruling on the parties' motions for directed verdict, the court stated:

> The Court at this time finds that, based on the evidence presented and in an attempt to construe the contract, jury questions have been created with regard to the issue of contract construction and whether the Defendants breached the contract....

Moreover, there was no extrinsic evidence to consider on the meaning of the contractual language, so the issue of the contract's interpretation should have remained with the court as well. At the most, the district court should have submitted special interrogatories on any relevant issues of fact. The court could then have utilized the jury's findings to determine whether Modern Piping had a

right to indemnity. *See Stowe*, 199 N.W.2d at 327. It was for the district court to determine the legal effect of the indemnity clause based on factual findings of the jury, if necessary to that determination, and to ultimately determine whether Modern Piping was entitled to indemnity from Blackhawk. It was error for the district court to submit those issues to the jury but for the reasons explained as follows, we do not reverse.

■ We now turn to the issue of interpreting and applying the indemnity clause in the parties' contract. Both parties center their arguments regarding the proper construction and interpretation of the contract around the causation issue. Modern Piping contends that the indemnity provision should be construed to apply regardless of whether Blackhawk was the cause of the sprinkler leak. Conversely, Blackhawk contends that the language of the indemnity agreement is not as broad as the agreements reviewed in cases cited by Modern Piping. It maintains that under the language of the agreement, a determination of the cause of the leak is essential to properly ascertain whether the damage was "in any manner connected with the execution" of the work under the subcontract. After our review of the indemnity provision and prior cases, we conclude that Modern Piping is not entitled to indemnification. Our conclusion is not based on the resolution of the causation issue, however, but on a ground not relied on by the district court nor raised by the parties in their briefs. *See Bensley v. State*, 468 N.W.2d 444, 445 (Iowa 1991) (noting that trial court can be affirmed on any ground appearing in the record, whether urged in the trial court or not).

We must determine whether the claim for which Modern Piping seeks indemnification is a claim "arising out of or resulting in whole or in part from or in any manner connected with, the execution of the Work under this Subcontract." None of our prior cases set forth a clear framework for interpreting and construing an indemnity provision; however, we find helpful the framework utilized by the Minnesota Supreme Court in one of its indemnity cases. *See R.E.M. IV, Inc. v. Robert F. Ackermann & Assocs.*, 313 N.W.2d 431, 433 (Minn.1981). The court in *R.E.M. IV* noted that a determination of the right to indemnification requires the resolution of two separate issues: "(1) for whose negligent acts causing damage is indemnity promised? and (2) what is the scope of the area in which indemnity is available?" *Id.*

Clearly, under the indemnity provision at issue, indemnity is promised for Blackhawk's negligent acts. The provision also implicitly covers injury or damage caused in part by other parties. This indemnity coverage is established by the sentence in the indemnity provision which states: "The Subcontractor's obligation under this paragraph expressly excludes only total liability created by the sole and exclusive negligence of Modern Piping, Inc. or the Owner." Through this sentence, indemnity is promised for not only Blackhawk's negligent acts, but also the acts of Modern Piping and Mortenson, unless the injury or damage is caused solely or exclusively by Modern Piping or Mortenson. The only fact issue which would require resolution by the jury is whether or not the damage was caused by the sole and exclusive negligence of Modern Piping or Mortenson. The jury was not given the opportunity to answer this particular question. Rather, it was required to answer the ultimate question of whether Blackhawk breached the indemnity provision. However, we find it unnecessary to remand this case for determination of the question by a jury because the resolution of the second issue is dispositive of the case as a matter of law.

The second issue set forth by the Minnesota Supreme Court in *R.E.M. IV* involves determining the scope of the indemnity. Our court of appeals recently relied on *R.E.M. IV* in ascertaining the scope of an indemnity provision. In *Campbell v. Mid–America Construction Co.*, 567 N.W.2d 667, 671 (Iowa App.1997), the court concluded that the indemnity provision at issue did not provide coverage for injury or damage which occurred after the subcontractor's work was finished. In *Campbell*, an employee of an erection subcontractor was injured when he climbed a fence to help guide a load of rebar iron being moved by a crane and fell. The fence had been erected by another subcon-

tractor, who had completed the work under its contract with the general contractor approximately two months prior to the incident. *Campbell,* 567 N.W.2d at 668. The injured employee sued the general contractor and the fence subcontractor. The general contractor settled with the employee prior to trial for $200,000. The jury found the fence subcontractor faultless and allocated twenty-five percent fault to the general contractor and seventy-five percent to the employee. The general contractor subsequently enforced an indemnification clause contained in its subcontract with the erection subcontractor, who then brought an action against the fence subcontractor for contribution based upon the parties' common indemnification obligation to the general contractor. The district court granted the fence subcontractor's motion for summary judgment. It concluded as a matter of law that the subcontractor had no obligation under the indemnity agreement because the "accident did not arise from or by reason of any work that [the fence subcontractor] did under the terms of its contract." *Id.* at 669.

On appeal, the court of appeals noted that the indemnification provision at issue, nearly identical to the provision in the case at bar, "comes from a standard form subcontract utilized by many general contractors in Iowa and other states." *Id.* (citing *R.E.M. IV,* 313 N.W.2d at 432–33). The court found that under the indemnification clause, "[t]he scope of the [subcontractor's] obligation to indemnify is specifically confined to damages and injuries 'arising out of . . ., resulting from or in any manner connected with, the execution of the work provided for in this Subcontract.' " *Id.* The court framed its task as determining whether this language applies to damages and injuries which occur after the subcontractor has completed its work.

The court of appeals noted that under prior decisions, an obligation to indemnify requires "some relationship between the work done by the subcontractor under the subcontract and the injury." *Id.* at 670 (citing *Ward v. Loomis Bros., Inc.,* 532 N.W.2d 807, 813 (Iowa App.1995) (no duty to indemnify when only involvement between subcontractor and injury was unauthorized use of

its equipment)); *see also Evans,* 231 N.W.2d at 916–17 (no duty to indemnify when the injury was caused by past negligent acts of the architect in designing the project and the indemnity provision provided that any right to indemnity against subcontractor be "due to the carrying on of [the subcontractor's] work").

The court of appeals concluded as follows:

In our effort to now define the extent of this connection or relationship, we not only consider the precise indemnification language, but all the language in the indemnification clause. Contracts must be interpreted as a whole to gain a true perspective of the intention of the parties. *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents,* 471 N.W.2d 859, 863 (Iowa 1991) (contract must be interpreted as a whole).

The precise indemnification language in this case does not reveal a clear intention of the parties. However, we find it significant that the indemnification clause concludes by requiring the subcontractor to "obtain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph." General liability insurance normally does not provide coverage for a contractor after the project is completed. *See Harbour v. Mid–Continent Cas. Co.,* 752 P.2d 258, 260–61 (Okla.Ct.App.1987). Instead, a completed operations hazard endorsement is necessary to insure a contractor against accidents which occur after the completion of a project. *Id.; see* 7A John A. Appleman, *Appleman, Insurance Law and Practice* § 4508.03, at 388–90 (rev. ed.1979). Thus, we believe the indemnification language imposing an obligation on the subcontractor to carry only general liability insurance and not completed operations insurance persuasively reveals an intention to limit indemnification while the work is in progress. It would be inconsistent and unreasonable to impose a duty to maintain insurance to cover an obligation for indemnity which is more narrow than the scope of the indemnity. An interpretation of a contract which gives a reasonable and effective meaning to all terms is pre-

ferred to one which leaves a part unreasonable. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 26 (Iowa 1978).

. . . .

It is logical to interpret the indemnification provision to limit its coverage to damage or injury which occurs during the performance of the work under the subcontract. *R.E.M. IV*, 313 N.W.2d at 435. *Id.* (footnotes omitted).

We find the reasoning of the court of appeals in its resolution of the indemnity issue in *Campbell* persuasive. The indemnity provision in the contract between Modern Piping and Blackhawk contains a similar statement regarding liability insurance:

> The Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph and other contractual indemnities assumed by the Subcontractor in this Subcontract.

As noted by the court of appeals in *Campbell* and the Minnesota Supreme Court in *R.E.M. IV*, this provision reveals an intent by the drafters of the subcontract to require indemnity only while the work is in progress. *Id.; see also R.E.M. IV*, 313 N.W.2d at 435. While the disputes in *Campbell* and *R.E.M. IV* were between a subcontractor and the general contractor and the present dispute is between two subcontractors, that distinction presents no reason to alter our conclusion. Similarly, the fact that *Campbell* involved a personal injury to an employee and not a claim for property damage by the owner of the property is not a sufficient reason to distinguish the case. *R.E.M. IV* did involve property damage (water damage from sprinkler pipes) and the court reached the same conclusion. *R.E.M. IV*, 313 N.W.2d at 435.

We conclude that the indemnity provision in the case at bar does not require Blackhawk to indemnify Modern Piping for the damage caused by the sprinkler leak. We reach this conclusion based on the requirement that Blackhawk maintain only general liability insurance, which is indicative of the parties' intent that the indemnity provision was only intended to provide coverage while

the work of the subcontract was being performed.

2. Warranty Clause

■ The courts in both *Campbell* and *R.E.M.* recognized that the interpretation of the indemnity provision in such a way as to negate a duty to indemnify by the subcontractor did not foreclose other avenues through which liability could be placed on the subcontractor. *See Campbell*, 567 N.W.2d at 671 n. 2 (recognizing that the subcontract between the parties did not totally relieve the subcontractor from liability where contract also included warranty provision; however, jury found subcontractor faultless and thus, warranty provision did not apply); *R.E.M. IV*, 313 N.W.2d at 436 (noting that court's refusal to require indemnity did not mean subcontractor escaped liability, citing warranty provision). As mentioned above, Modern Piping did raise the warranty issue in its petition and the issue was submitted to the jury. However, Modern Piping did not raise this theory of recovery in its motion for directed verdict or in its motion for judgment notwithstanding the verdict. Furthermore, Modern Piping failed to raise the warranty claim in its brief before our court. Therefore, we conclude that Modern Piping has not preserved error and has waived its right to appellate review of the warranty issue.

3. Other Allegations of Error

Modern Piping also contends that the district court erred in submitting instructions on negligence to the jury. It is not necessary for us to address this alleged error because we have resolved the indemnity claim as a matter of law.

IV. Costs

Following the filing of the appeal in this matter, Blackhawk filed a motion with our court for conditional assessment of costs for production of the appendix. We ordered that the matter be submitted with the appeal.

On May 5, 1997, Blackhawk filed its designation of parts it wished to have included in the parties' joint appendix pursuant to Iowa Rule of Appellate Procedure 15(b). On May 20, 1997, Modern Piping informed Blackhawk

that it believed certain parts designated by Blackhawk were unnecessary to deciding the issues on appeal. Modern Piping requested an advance of $75 for the cost of including those items in the appendix pursuant to rule 15(c). Blackhawk paid the advance, but now requests that those costs be taxed to Modern Piping. The parts in controversy included various pretrial orders and certain discovery requests. Blackhawk contends the parts were necessary to a proper determination of whether Modern Piping waived its right to arbitration.

Iowa Rule of Appellate Procedure 15(c) provides as follows:

> Unless the parties otherwise agree, the cost of producing the appendix shall initially be paid by appellant, but if appellant considers that parts of the record designated by appellee for inclusion are unnecessary for the determination of the issues presented, appellant may so advise appellee and appellee shall advance the cost of including such parts. The cost of producing the appendix shall be taxed as costs in the case, but if either party shall cause matters to be unnecessarily included in the appendix the appropriate appellate court may impose the cost of producing such parts on that party.

We find that the parts designated by Blackhawk were necessary to a proper determination of the waiver-of-arbitration issue. Indeed, we utilized those parts in making our determination of whether Modern Piping had waived its right to arbitration. Therefore, we assess $75 of costs to Modern Piping to reimburse Blackhawk for the advancement of costs.

V. Summary

We affirm the district court's denial of Modern Piping's motion to compel arbitration. Modern Piping waived this right by proceeding with litigation for eighteen months. This conduct frustrated the purpose of arbitration, was inconsistent with a desire to pursue arbitration, and prejudiced Blackhawk. Although we find that the district court improperly submitted the issues of contract interpretation and construction to the jury, we find as a matter of law that

Modern Piping was not entitled to indemnity from Blackhawk under the provision in the parties' contract. We also conclude that Modern Piping did not preserve error on its warranty claim.

Costs are assessed to Modern Piping.

**AFFIRMED.**