# IN THE COURT OF APPEALS OF IOWA

No. 25-0499
Filed January 28, 2026

**Conlon Construction Co.,**
Plaintiff/Counterclaim Defendant–Appellant,

v.

**Tri-State Concrete Construction, Inc., Top Notch Plumbing Heating &
Electrical, Inc., and Runde Electric, LLC,**
Defendants/Counterclaim Plaintiffs–Appellees.

Appeal from the Iowa District Court for Dubuque County,
The Honorable Monica Zrinyi Ackley, Judge.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

Jacob W. Nelson and Joseph J. Porter of Simmons Perrine Moyer Bergman
PLC, Cedar Rapids, attorneys for appellant Conlon Construction Co.

Jeremy N. Gallagher of Kintzinger, Harmon, Konrardy, P.L.C., Dubuque,
attorney for appellee Top Notch Plumbing, Heating & Electrical, Inc.

John D. Freund of Freund Law Firm, P.C., Dubuque, for appellee Runde
Electric, LLC.

Brian J. Kane of Kane, Norby & Reddick, P.C., Dubuque, for appellee Tri-
State Concrete Construction, Inc.

Considered without oral argument
by Schumacher, P.J., and Badding and Langholz, JJ.
Opinion by Schumacher, P.J.

**SCHUMACHER, Presiding Judge.**

Conlon Construction Co. raised several alternative challenges to breach-of-contract counterclaims brought by subcontractors in Conlon's mechanic's lien foreclosure suit against the owner and developer of the Estates of Dubuque residential cooperative. Upon our review, we affirm the court's denial of Conlon's motion to dismiss the subcontractor counterclaims. But we reverse the court's denial of Conlon's motion to compel arbitration and remand for further proceedings.

## I.  Background Facts and Proceedings

Following its work as general contractor for development of the Estates of Dubuque, Conlon Construction Co. petitioned to foreclose two mechanic's liens totaling nearly $1.6 million against the property owner and various other defendants.[1] Three of those other defendants—subcontractors Tri-State Concrete Construction, Inc.; Top Notch Plumbing, Heating & Electrical; and Runde Electric, LLC—filed compulsory breach-of-contract counterclaims alleging Conlon's failure to pay under their subcontracts. Conlon moved to dismiss the counterclaims, or alternatively, to compel arbitration, arguing the subcontractors had "contractual obligations to mediate the allegations" before filing for breach of contract. The district court denied Conlon's motions. Conlon appeals, claiming the district court erred in denying its motion to compel arbitration against the subcontractors.

---

[1] Specifically, Conlon's foreclosure petition named the following defendants: The Estates of Dubuque, a Vintage Cooperative Community; Fidelity Bank & Trust; Pella Construction & Management Services, LLC; Heiar Brothers Fencing, Inc.; The Floor Show Corporation d/b/a Home and Floor Show; Tri-State Concrete Construction, Inc.; Top Notch Plumbing, Heating & Electrical, Inc.; Runde Electric, LLC; Future Construction, LLC; and Dubuqueland Door, Co.

Preliminarily, we note the parameters of this appeal. Conlon does not seem to challenge the district court's denial of its motion to dismiss the subcontractors' counterclaims. *See Schaefer v. Putnam*, 841 N.W.2d 68, 74–75 (Iowa 2013) (noting a counterclaim is mature when the complaining party is entitled to a legal remedy and "a party who fails to raise a compulsory counterclaim loses the claim"). And after this appeal was filed, subcontractors Top Notch and Runde filed notices with our supreme court stating they had dismissed their counterclaims against Conlon.[2] Therefore, this appeal centers on whether the district court erred in denying Conlon's motion to compel arbitration against the remaining subcontractor, Tri-State.[3]

## II. Standard of Review

We review Conlon's claim for correction of errors at law. *See Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999); *see also* Iowa Code § 679A.17(1)(a) (2024) (providing an appeal may be taken as a matter of right from an order denying a motion to compel arbitration).

## III. Discussion

Tri-State entered a contract with Conlon to provide concrete services as a subcontractor for the Estates of Dubuque project in return for payment by Conlon in the amount of $229,399. According to Tri-State, Conlon "failed to pay." Article 11 of the contract, titled "Dispute Mitigation and Resolution," states in relevant part:

---

[2] And although not relevant to this appeal, we further observe that Conlon has also dismissed its petition to foreclose its mechanic's liens, and all other parties to the district court proceeding appear have dismissed their claims and counterclaims.

[3] Tri-State waived the filing of a responsive brief on appeal.

**11.2 DISPUTES BETWEEN THE PARTIES** If the dispute resolution provisions between Constructor and Owner in the Subcontract Documents do not permit consolidation or joinder with disputes of third parties, such as Subcontractor, or if such dispute is only between the Parties, then the Parties shall submit the dispute to the dispute resolution procedures set forth in the section below.

**11.3 CONSTRUCTOR–SUBCONTRACTOR DISPUTE MITIGATION AND RESOLUTION**

. . . .

11.3.3 BINDING DISPUTE RESOLUTION If the matter is unresolved after submission of the matter to a mitigation procedure or to mediation [discussed above], except as provided in § 11.4, the Parties shall submit the matter to the binding dispute resolution procedure selected below:

11.3.3.1 ARBITRATION

☒ The Parties choose binding arbitration for any claim or dispute arising out of or relating to this Agreement.[4] **EACH PARTY WAIVES THEIR RIGHT TO BE HEARD IN A COURT OF LAW,** with or without a jury. Arbitration does not involve a judge or jury. Instead, an arbitrator with the power to award damages and other appropriate relief will decide claims and disputes. An arbitrator's award shall be final and binding upon the Parties, and judgment may be entered upon it in any court having jurisdiction.

11.3.3.2 Neither Party may commence arbitration if the claim or cause of action would be barred by the applicable statute of limitations had the claim or cause of action been filed in a state or federal court. Receipt of a demand for arbitration by the person or entity administering the arbitration shall constitute the commencement of legal proceedings for the purposes of

---

[4] Paragraph 11.3.3.3 further states that an arbitration "shall use" "the current [American Arbitration Association (AAA)] Construction Industry Arbitration Rules and AAA administration."

5

determining whether a claim or cause of action is barred by the applicable statute of limitations. If, however, a state or federal court exercising jurisdiction over a timely filed claim or cause of action orders that the claim or cause of action be submitted to arbitration, the arbitration proceeding shall be deemed commenced as of the date the court action was filed, provided that the Party asserting the claim or cause of action files its demand for arbitration with the person or entity administering the arbitration within thirty (30) Days after the entry of such order.

. . . .

### 11.3.3.4 LITIGATION

☐ Litigation in either the state or federal court having jurisdiction of the matter in the location of the Project.

. . . .

**11.4 MULTIPARTY PROCEEDING** All parties necessary to resolve a matter agree to be parties to the same dispute resolution proceeding, if possible. To the extent disputes between the Parties involve in whole or in part disputes between Constructor and Owner, disputes between Subcontractor and Constructor shall be decided by the same tribunal and in the same forum as disputes between Constructor and Owner.

Relying on paragraph 11.4, the district court determined that once Conlon petitioned to foreclose its mechanic's liens for its work as general contractor on the Estates of Dubuque project, matters arising from the project "should all be addressed by one tribunal and not dealt with on a piece meal basis when the dispute arises between more than one party to the agreement." Accordingly, the court allowed Tri-State's counterclaim against Conlon. But the court denied Conlon's alternative motion to compel arbitration against Tri-State, stating:

> [Conlon] invoked its right to foreclose on mechanic's liens before it forced the parties into arbitration under the terms of the contract. It must now live with that choice. Additionally, the Court indicated it agreed with the [subcontractors], and continues to do so, that this is a multiparty action

6

with many moving parts. The contract establishes that the district court is the proper arena in which to have the merits and rights and responsibilities of all parties litigated and resolved.

As noted, the parties do not seem to dispute the court's decision on the compulsory nature of Tri-State's counterclaim. However, Conlon argues "compulsory counterclaims are arbitrable." According to Conlon, "those claims are just as much 'subject' to arbitration as non-compulsory counterclaims are." Indeed, Tri-State pled its counterclaim "[n]otwithstanding the provisions of Article 11 . . . , which provide for alternative dispute resolution procedures for disputes between the parties," noting that the claim "must be urged or lost." Quoting *North Iowa Steel Co. v. Staley*, 112 N.W.2d 364, 366 (Iowa 1961), Tri-State maintained that its counterclaim "arose out of the same transaction as plaintiff's claim but it is set up in a separate declaration against plaintiff."

The parties further agree this controversy is governed by the terms of the contract, which includes an express agreement to arbitrate. "A provision in a written contract to submit to arbitration a future controversy arising between the parties is valid, enforceable, and irrevocable unless grounds exist at law or in equity for the revocation of the contract." Iowa Code § 679A.1(2). Unless the encompassing contract falls within a statutory exception to section 679A.1(2), none of which are applicable here, [5] the arbitration provision is enforceable. *See Pa. Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 811 (Iowa 2002). "On application of a party showing an agreement described in section 679A.1 and the opposing party's refusal to arbitrate, the district court

---

[5] The three instances in which the statute validating arbitration agreements does not apply are: (1) contracts of adhesion; (2) contracts between an employer and an employee; and (3) with an exception not pertinent here, tort claims. Iowa Code § 679A.1(2)(a)–(c).

*shall* order the parties to proceed with arbitration." Iowa Code § 679A.2(1) (emphasis added); *see also ACCU Steel, Inc. v. Legacy Bldg. Sols., Inc.*, No. 16-CV-00050, 2017 WL 11179922, at \*2 (S.D. Iowa Aug. 30, 2017) (discussing chapter 679A and observing "Iowa's strong preference for arbitration matches 'a strong national policy in favor of arbitration'" (citation omitted)).

Here, neither party claims the arbitration provision of their contract is unenforceable. *See ACCU Steel*, 2017 WL 11179922, at \*2 (noting the parties' agreement as to the validity of the arbitration provision at issue); *but see Wesley Ret. Servs.*, 594 N.W.2d at 26 (affirming the district court's denial of a motion to compel arbitration upon finding the claimant's "tort claim is not subject to the parties' arbitration agreement" under the exception in section 679A.1(2)(c)). The key language of that provision, "The Parties choose binding arbitration for any claim or dispute arising out of or relating to this Agreement," covers Tri-State's breach-of-contract claim. *See* Iowa Code § 679A.1; *Wesley Ret. Servs.*, 594 N.W.2d at 26 (noting that arbitration of contract claims is to be compelled under chapter 679A). "[T]herefore the breach-of-contract claim must be arbitrated." *ACCU Steel*, 2017 WL 11179922, at \*3.

Under these facts and circumstances, the district court erred in declining to enforce the arbitration clause.[6] *See Pa. Life Ins.*, 641 N.W.2d at

---

[6] Although not dispositive to our analysis under the particular facts and claim presented here, we make two further observations. First, there was no delay in Conlon's asserting its right to arbitrate that would prejudice Tri-State or constitute a waiver of Conlon's right to arbitration. *But see Mod. Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc.*, 581 N.W.2d 616, 621–22 (Iowa 1998) (holding piping contractor's "conduct during the eighteen-month period from the filing of the petition to the date of the motion to compel arbitration was clearly inconsistent with asserting such a right" and such "conduct prejudiced [sprinkler subcontractor] by forcing it to participate in discovery and requiring it to spend money and expend other resources in preparation for trial which might not

812–13 (rejecting arguments concerning "inefficiencies in requiring arbitration of some of the claims involving these parties, but not others, [because] that is the agreement made by the parties" and finding the arbitration provision in the parties' contract was not waived "by commencing the instant litigation"). We therefore reverse the portion of the court's order denying Conlon's motion to compel arbitration against Tri-State. Because that claim is severable, on remand, the district court shall stay the proceedings regarding Tri-State's claim pending the outcome of arbitration. *See* Iowa Code § 679A.2(4); *accord ACCU Steel*, 2017 WL 11179922, at *4;

have been necessary in arbitration"), *overruled on other grounds by Wesley Ret. Servs.*, 594 N.W.2d at 29; *Liberty Builders, Inc. v. Horton*, 521 S.E.2d 749, 753–54 (S.C. Ct. App. 1999) (finding contractor "waived its right to arbitrate" and affirming denial of motion to stay district court action to enforce arbitration clause where the parties had already engaged in "litigation for two and one-half years," finding the contractor's "delay in demanding arbitration until the litigation was nearly complete not only prejudiced the [property owner] but enabled [the contractor] to 'test the water before taking the swim'"). Specifically, Conlon initiated its foreclosure petition in September 2024, Tri-State filed its answer and counterclaim against Conlon in November, and Conlon filed its motion to dismiss, or alternatively, to compel in December.

Second, Tri-State was not the party that initiated the district court action. *See generally Schaefer*, 841 N.W.2d at 77–78 (holding "Iowa Code section 654A.6 does not require a creditor to seek mediation before asserting a compulsory counterclaim against a creditor. . . . Rather, we view the jurisdictional prerequisite provision only as requiring a creditor to first comply with the mandatory mediation requirements before it starts a civil action in the manner prescribed by the rules of civil of procedure. The provision has no effect on compulsory counterclaimants, who do not start civil actions."); *Clinton Nat'l Bank v. Kirk Gross Co.*, 559 N.W.2d 282, 284 (Iowa 1997) (finding a contractor, who entered into a contract with a bank for remodeling work, did not waive its right to arbitration of a breach-of-warranty claim filed by the bank by filing a mechanic's lien against the bank for remaining payment on the contract). Indeed, enforcement of the arbitration clause under these circumstances protects the rights of both Conlon (to comply with the parties' contractual arbitration clause) and Tri-State (to adhere to the time requirements to file a compulsory counterclaim).

*see also generally JAKS Props., LLC v. St. Croix Hospice, LLC*, No. 17-1198, 2018 WL 5846088, at *9 (Iowa Ct. App. Nov. 7, 2018) (remanding with instructions regarding the stay of litigation pending arbitration).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**