# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2285

_____

TeamBank, N.A.,                                          *
                                                        *
        Appellee,                                    *
                                                        *    Appeal from the United States
    v.                                                 *    District Court for the
                                                        *    Western District of Missouri.
D. Eric McClure, in his official capacity  *
as Director of the Missouri Division       *
of Finance, of the Department of           *
Economic Development, State of             *
Missouri; Joseph L. Driskill, in his       *
official capacity as the Director of the   *
Department of Economic Development, *
State of Missouri,                          *
                                                        *
        Appellants.                                  *
_____                                     *
                                                        *
Office of the Comptroller of Currency,     *
                                                        *
        Amicus Curiae.                               *

_____

Submitted:  December 10, 2001

Filed:  February 6, 2002

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

TeamBank, N.A. (TeamBank) sued the Director of the Missouri Division of Finance (the Director) to prevent the State of Missouri from interfering with TeamBank's merger with the First National Bank and Trust Company of Parsons, Kansas (First National Bank). The district court[1] granted an injunction prohibiting the Director from taking any action on the State's claim that the merger violates state and federal law. The Director appeals,[2] and we affirm.

## I.    BACKGROUND

TeamBank is a national bank that was founded in 1874. For most of its history, TeamBank has had its headquarters in Paola, Kansas. It has branch offices in Kansas and other states. In 1997, TeamBank purchased the assets of a bank in Freeman, Missouri, which is less than thirty miles from Paola, and TeamBank moved its headquarters there. After relocating its main office to Freeman, TeamBank opened two new offices in Missouri.

On March 23, 2000, TeamBank's board of directors approved a merger with First National Bank, which had its main office in Parsons, Kansas. Both banks were wholly owned subsidiaries of Team Financial Acquisition Subsidiary, Inc., which is itself a wholly owned subsidiary of a Kansas bank holding company, Team Financial,

---

[1] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

[2] Joseph L. Driskill, the Director of the Missouri Department of Economic Development, also filed a notice of appeal. In the district court, TeamBank originally named Driskill as a defendant but later conceded that its claims against Driskill should be dismissed. TeamBank has not argued otherwise on appeal, and our opinion in this case only applies to TeamBank and D. Eric McClure, the Director of the Division of Finance. We assume the district court will have the clerk enter a judgment dismissing Driskill.

Inc. Under the terms of the proposed merger, TeamBank was to be the surviving entity and First National Bank's charter was to be dissolved. In addition, TeamBank's main office was to return to Paola, Kansas, and TeamBank's branches in Kansas, Missouri, and Nebraska were to be part of the new bank.

On March 24, 2000, TeamBank filed an application for approval of the merger with the Office of the Comptroller of the Currency (OCC). The State of Missouri, through the Director, notified the OCC of its opposition to the merger and its position that the merger violates the Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994 (Riegle-Neal Act), 12 U.S.C. §§ 215a-1, 1831u & 36(d). The Riegle-Neal Act allows states to prohibit mergers between out-of-state banks and in-state banks which have been in existence for less than five years. Missouri's "minimum-age" law, Mo. Rev. Stat. §§ 362.077 & 362.610, adopted in 1997, prohibits such mergers. A Missouri amendment, adopted in 1999, counts the age of a bank that relocates to Missouri from another state from the date of the relocation. Mo. Rev. Stat. § 362.077.2. The Director advised the OCC that these statutes prohibit the proposed merger.

On May 26, 2000, before the merger was approved, the Director sent TeamBank a letter notifying the bank of the State's position that the merger was illegal. "The Division of Finance," he wrote, "requests that your institution honor our state laws by refraining from relocating out of Missouri until the five-year threshold is met." In the same letter, the Director also wrote of his office's "plan to meet with the Missouri Attorney General's Office shortly to discuss our legal options in this matter."[3]

_____

[3]At oral argument, counsel for the Director advised the court the State of Missouri would take action on its claim that the merger is illegal if we were to find in its favor on appeal. We find the record supports that TeamBank is in imminent "danger of sustaining some direct injury," thus, a case or controversy exists. Thus, the federal courts have jurisdiction over the subject matter of this case. See City of

On June 20, 2000, the OCC approved the proposed merger. In so doing, the OCC issued an opinion which addressed and rejected the Director's legal arguments against the merger. On June 26, 2000, TeamBank and First National Bank merged.

TeamBank filed this lawsuit on the same day as the merger, seeking a declaration that the merger is lawful and an injunction preventing the Director from "taking any action upon [his] claim that [TeamBank] is in violation of applicable federal and state laws." The district court ruled in favor of TeamBank and granted the injunction on cross-motions for summary judgment.

On appeal, the Director raises the same arguments he made informally to the OCC. He also argues that the OCC's ruling will have the effect of allowing other banks to evade restrictions on interstate branching that Missouri has enacted in accordance with the Riegle-Neal Act.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. See Adams v. Boy Scouts of America-Chickasaw Council, 271 F.3d 769, 775 (8th Cir. 2001). Because this case involves only questions of law, it is particularly appropriate for summary judgment. See id.

## III.    DISCUSSION

The Riegle-Neal Act generally permits interstate bank mergers in participating states, but prohibits such mergers that:

> would have the effect of permitting an out-of-State bank or out-of-State bank holding company to acquire a bank in a host State that has not been

---

Los Angeles v. Lyons, 461 U.S. 95, 101 (1983); Ashcroft v. Mattis, 431 U.S. 171, 172 (1977).

in existence for the minimum period of time, if any, specified in the statutory law of the host State.

12 U.S.C. § 1831u(a)(5)(A). The "minimum period of time" enforceable under the Riegle-Neal Act cannot exceed five years. 12 U.S.C. § 1831u(a)(5)(B).

In 1997, Missouri amended its banking statutes to add a minimum-age statute as authorized by the Riegle-Neal Act. Missouri's minimum-age statute permits out-of-state banks to merge with banks in Missouri if the bank being acquired was at least five years old. Mo. Rev. Stat. §§ 362.077.1, 362.610 (Supp. 2001). In 1999, Missouri supplemented its minimum-age statute with a statute on bank relocation:

> Any state bank, trust company or national bank, already in existence in another state, which is relocated to Missouri de novo shall calculate the age of its bank charter for Missouri purposes as of the date such charter is moved to Missouri, and may not engage in an interstate acquisition or merger with the result that such charter is merged or relocated to another state with Missouri branches of such charter remaining in Missouri, until such bank or trust company's charter is at least five years old.

Mo. Rev. Stat. § 362.077.2 (Supp. 2001). The Director invokes both the minimum-age statute and the bank-relocation statute in opposition to the merger of TeamBank and First National Bank.

The Director argues that the merger violates the Riegle-Neal Act because its effect is to permit a Kansas bank to acquire a Missouri bank that is less than five years old. Under the Director's theory, the Kansas bank is either the new TeamBank entity with its main office in Paola, Kansas, or the old First National Bank with its main office in Parsons, Kansas. According to the Director, the Missouri bank is the old TeamBank at its former headquarters in Freeman, Missouri. TeamBank has been in existence since 1874, but it only moved to Missouri in 1997. The Director argues that, at the time of the merger, TeamBank was less than five years old under

Missouri's bank-relocation statute. See Mo. Rev. Stat. § 362.077.2. Thus, the argument goes, TeamBank's acquisition by a Kansas bank violates Missouri's minimum-age statute which was enacted pursuant to the Riegle-Neal Act.

The OCC rejected the Director's argument on three grounds. First, the OCC concluded Missouri's minimum-age statute does not apply to TeamBank's merger. In accordance with Riegle-Neal, the Missouri statute only protects Missouri banks that are being acquired. See Mo. Rev. Stat. §§ 362.077.1, 362.610. According to the OCC, TeamBank, as the surviving bank, is the acquiring bank, and First National Bank is the bank being acquired. Since First National Bank's home state is Kansas, the only minimum-age statute that potentially applies is that of Kansas, and Kansas does not have any minimum-age requirement.

Second, the OCC concluded that even if Missouri's minimum-age statute does apply, its bank-relocation statute does not. In reaching this conclusion, the OCC applied the general presumption against construing statutes retroactively. TeamBank moved its main office to Missouri in 1997. The bank-relocation statute was not adopted until 1999, and applies to a bank "which is relocated to Missouri," Mo. Rev. Stat. § 362.077.2 (emphasis added), in contrast to a bank "which has relocated to Missouri." This language, the OCC reasoned, was not intended to apply to a bank which, like TeamBank, relocated to Missouri before the statute was enacted. Because the statute did not reset TeamBank's age to zero as of the date it moved to Missouri, TeamBank is more than five years old. Thus, even if TeamBank were to be acquired by First National Bank, the merger would not violate Missouri's minimum-age statute.

Third, the OCC found that even if the bank-relocation statute does apply retroactively, it conflicts with and is preempted by the Riegle-Neal Act. Riegle-Neal, the OCC pointed out, calculates a bank's age according to the time it has been "in existence," not the time it has been in a particular state. See 12 U.S.C. § 1831u(a)(5)(A). The OCC also relied upon the congressional policies it found to

-6-

underlie the Riegle-Neal Act. Citing a House Conference Report, the OCC found that Riegle-Neal embodies a policy that a bank which has moved its main offices into a new state should be treated the same as other banks with main offices in that state. See H.R. Conf. Rep. No. 651, 103d Cong., 2d Sess. 57 (1994). Missouri's bank-relocation statute, the OCC reasoned, treats relocated banks differently by requiring them to calculate their age based upon the time they have been in Missouri rather than the time they have been in existence. Since this requirement conflicts with the OCC's interpretation of Riegle-Neal, the OCC found it preempted.

The OCC, participating amicus curiae in this case, argues that its decision is entitled to deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Chevron deference applies when Congress has, either explicitly or implicitly, left a gap in a statute to be filled by a particular agency. Chevron, 467 U.S. at 843-45. In appropriate cases, Chevron requires courts to give "considerable weight . . . to an executive department's construction of a statutory scheme it is entrusted to administer." Id. at 844. Under Chevron, such decisions are controlling "unless they are arbitrary, capricious, or manifestly contrary to the statute." Id.; see also In re Old Fashioned Enters., Inc., 236 F.3d 422, 425 (8th Cir. 2001).

Chevron does not apply to every interpretation of a statute by an agency. As the Supreme Court recently explained, Chevron deference is generally reserved for interpretations reached through "relatively formal" administrative procedures, such as "notice-and-comment rulemaking or formal adjudication." United States v. Mead Corp., 533 U.S. 218, 121 S. Ct. 2164, 2172-73 (2001); see also Central S.D. Coop Grazing Dist. v. Secretary of U.S. Dep't. of Ag., 266 F.3d 889, 894 (8th Cir. 2001).[4]

_____

[4]Agency interpretations that are not the result of such formal administrative procedures are generally entitled to a lesser degree of deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944). See Mead Corp., 121 S. Ct. at 2175-76.

The decisions of the Comptroller of the Currency, however, present an exception to this general rule. Such decisions merit deference "even when no such administrative formality was required and none was afforded." Mead Corp., 121 S. Ct. at 2173 (citing NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256-57, 263 (1995)).[5]

The Riegle-Neal Act's provisions on state minimum-age laws left a space for the OCC to fill through interpretation. In enacting Riegle-Neal, Congress prohibited mergers that "have the effect" of violating certain state minimum-age statutes. 12 U.S.C. § 1831u(a)(5)(A). Congress did not give any explicit guidance on what kinds of mergers fall within this rather imprecise statutory prohibition. As the agency charged with implementing Riegle-Neal, the OCC is entitled to fill this gap in the statute through informal adjudication.

The opinion issued by the OCC in this case is thorough and well enough reasoned to merit deference under Chevron. The OCC's interpretation of the Riegle-Neal Act in this case is particularly suited for Chevron deference because it involves "reconciling conflicting policies" and depends "upon more than ordinary knowledge" about interstate banking. See Chevron, 467 U.S. at 844 (quoting United States v. Shimer, 367 U.S. 374, 382 (1961)). The district court agreed with the OCC's reasoning. We find the OCC's reasoning persuasive to the extent it interprets and applies the Riegle-Neal Act to the facts and specific issues raised in this case. While the OCC's reasoning may be open to challenge on certain points, it is not arbitrary, capricious, or manifestly contrary to law.

---

[5]The Court has explained this deference as a matter of "longstanding precedent," based on the conclusion that the "Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of [the rule of deference] with respect to his deliberative conclusions as to the meaning of these laws." Mead Corp., 121 S. Ct. at 2173 n.13 (quoting NationsBank of N.C., 513 U.S. at 256-57) (alteration in original).

The Director also opposes the merger on the grounds it would permit other banks to evade Riegle-Neal's limits on interstate banking. See McQueen v. Williams, 177 F.3d 523, 530-35 (6th Cir. 1999) (invalidating "sham" relocation of a bank's main office to another state under the law prior to Riegle-Neal). However, the Director does not contend, nor does the record reflect, that TeamBank's initial relocation to Freeman, Missouri, was part of a scheme to evade federal law. We need not decide, in this case, whether the reasoning employed by the OCC in approving TeamBank's merger would also apply to a merger involving a bank's sham relocation to another state.

## IV. CONCLUSION

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.