Shawn COCHRAN, Plaintiff,

v.

GEHRKE, INC., and National Tank Corporation, Defendants,

and

Gehrke, Inc., Cross–Claim Plaintiff,

v.

National Tank Corporation, Cross–Claim Defendant,

and

National Tank Corporation, Cross–Claim Plaintiff,

v.

Gehrke, Inc., Cross–Claim Defendant.

No. C 01–161–MWB.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Nov. 24, 2003.

---

Marc S. Harding, Marc S. Harding PC, Des Moines, IA, for Plaintiff.

Donald J. Pavelka, Jr., Thomas M. Braddy, Locher, Cellilli, Pavelka & Dostal, LLC, Omaha, NE, Marc Thomas Beltrame, Megan M. Antenucci, Whitfield &

Eddy, PLC, Des Moines, IA, John A. Templer, Jr., Pingel & Templer, PC, West Des Moines, IA, for Defendants/Cross Claimants/Cross Defendants/Third–Party Plaintiff.

Kent Alan Gummert, Gaudineer & Comito, LLP, West Des Moines, IA, for Third–Party Defendant.

MEMORANDUM OPINION AND ORDER REGARDING MOTION BY GEHRKE, INC., FOR PARTIAL SUMMARY JUDGMENT ON ITS INDEMNITY CROSS–CLAIM AGAINST NATIONAL TANK CORPORATION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................988
   A. *Factual Background* ...........................................988
   B. *Procedural Background* ........................................990

II. *LEGAL ANALYSIS* ...............................................990
   A. *Standards For Summary Judgment* ..............................990
   B. *Arguments Of The Parties* .....................................992
      1. *Gehrke's opening argument* ................................992
      2. *National Tank's resistance* ................................992
      3. *Gehrke's reply* ..........................................993
   C. *Principles Of Iowa Indemnity Law* ..............................993
      1. *Contractual indemnity* ....................................993
      2. *Indemnity for the indemnitee's own negligence* ..............994
      3. *Roles of court and jury* ...................................995
   D. *Interpretation And Construction Of The Indemnity Agreement* ...........996
      1. *Entities for whose acts indemnity is promised* ...............997
      2. *Scope of the area in which indemnity is available* ...........1000
      3. *Summary* ..............................................1001
   E. *National Tank's Assertion Of Factual Disputes* ...................1002

III. *CONCLUSION* .................................................1002

In a previous ruling in this lawsuit, which arises from an accident on a construction project in which general, sub-, and sub-subcontractors were involved, this court observed that it was almost inevitable that issues of indemnity and contribution would arise. Indeed, the court has yet to address directly in this case the question of who is or is not liable to the injured plaintiff. Instead, the court has previously addressed cross-claims and third-party claims for indemnity and contribution by a sub-contractor against the general contractor and a sub-subcontractor. *See Cochran v. Gehrke Constr.*, 235 F.Supp.2d 991 (N.D.Iowa 2002). Now before the court is the general contractor's motion for partial summary judgment on its own indemnity cross-claim against a subcontractor. Consequently, the court must once again probe Iowa's sometimes arcane rules of indemnity.

## I. INTRODUCTION

### A. Factual Background

Whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine issues of material fact for trial. *See, e.g., Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996). However, a case involving only questions of law, "is particularly appropriate for summary judgment." *TeamBank, N.A. v. McClure*, 279 F.3d 614, 617 (8th Cir.2002) (citing *Adams v. Boy Scouts of America–Chickasaw Council*, 271 F.3d

769, 775 (8th Cir.2001)). Here, Gehrke, Inc., the movant for partial summary judgment, contends that the issues presented are essentially legal, while National Tank Corporation, the party resisting the motion, contends that various genuine issues of material fact preclude summary judgment on any question presented. The court need not decide immediately which parties' view of the case is correct. Rather, the court will content itself, for now, with a statement of sufficient of the facts, both disputed and undisputed, to put in context the parties' arguments for and against partial summary judgment on Gehrke's indemnity claim against National Tank, without attempting a comprehensive review of the entire record.

In its previous ruling, the court observed that the factual background to this lawsuit is perhaps deceptively simple. The claims among the parties arise from a construction accident on July 20, 2000, during the erection and refurbishing of a water tower in New Providence, Iowa. The City of New Providence had hired Gehrke, Inc., as the general contractor for the project, and Gehrke, in turn, subcontracted with National Tank Corporation to perform some of the construction work. National Tank, in turn, hired Eagle Grove Crane Service to set up and operate the crane used in connection with the water tower project. Shawn Cochran was, in turn, an employee of Eagle Grove. Cochran alleges that, while the water tank was being placed on the tower, "[t]he ground beneath the crane slowly sank, causing instability that [Cochran] was powerless to control," and "[t]he crane toppled, dropping [Cochran] approximately 140 feet to the ground below," with the result that Cochran was "critically injured." Plaintiff's Complaint at ¶¶ 10–12.

What must now be added to this picture is some examination of the contractual relationship between Gehrke, the general

contractor, and National Tank, the subcontractor, and still more specifically, the indemnity provisions in their contract. On January 31, 2000, Gehrke and National Tank entered into a "Subcontract Agreement." *See* Gehrke's Appendix at 72–73. Section 2 of that agreement describes the work to be performed by National Tank as preparing and erecting the tank, sand blasting and painting the tank, modifying the control system, sand blasting and painting an existing tank, and furnishing new 30″ fill pipe. *Id.* at 72. Section 8 of that agreement provides for indemnity as follows:

> The Subcontractor agrees to indemnify and save harmless the Contractor from any and all loss or damage (including, without limiting the generality of the foregoing, legal fees, and disbursements paid or incurred by the Contractor to enforce the provisions of this paragraph), occasioned wholly or in part by any negligent act or omission of the subcontractor or that of anyone directly or indirectly employed by them or performing the work of this Subcontract under the direction of the Subcontractor or anyone for whose acts any of them may be liable in carrying out the provisions of the general contract and of this Subcontract regardless of whether or not it is caused in part by a party indemnified hereunder.

*Id.*

Gehrke alleges, and National Tank does not dispute, that Howard McDole, the owner of National Tank, entered into a subcontract with Eagle Grove to perform crane work on the project and that, on the day of the accident giving rise to this litigation, McDole explained to Steve Campbell of Eagle Grove what was going on and what they had to do. The parties also agree that the accident occurred during the completion of the water main im-

provement project in New Providence, Iowa, and during the performance of the subcontract between Gehrke and National Tank. However, they dispute precisely how much control or direction National Tank, in the person of McDole or other representatives, was exercising over the way that Eagle Grove was performing its subcontract with National Tank. Gehrke contends that McDole was present at the time of the accident, watching the tower being lifted, to make sure that nothing was going to "hang up" or "snag," and that National Tank employees were communicating with an Eagle Grove employee on the ground directing the placement of the water tank. However, National Tank denies these allegations. Instead, National Tank contends that McDole left the operation of the crane to Eagle Grove personnel, and further contends that the failure of Eagle Grove personnel to place cribbing properly under the outriggers of the crane was the *sole* cause of the collapse of the crane, which Gehrke denies.

### B. Procedural Background

On November 23, 2001, Shawn Cochran initiated this action by filing a Complaint against defendants Gehrke, National Tank, and another subcontractor since dismissed from the case, in which Cochran alleged that the negligence of the defendants caused his injuries. Defendant Gehrke answered the Complaint on February 1, 2002, and defendant National Tank answered on February 4, 2002. Cochran's Complaint, however, is not the subject of the motion for partial summary judgment presently before the court.

Instead, the motion presently before the court involves Gehrke's cross-claim against National Tank for indemnification for damages to Cochran pursuant to the Subcontract Agreement between National Tank and Gehrke. That cross-claim was introduced into this litigation in Gehrke's amended answer and cross-claim on May

22, 2002. National Tank answered Gehrke's cross-claim on June 12, 2002. Although National Tank also asserted a cross-claim for indemnification against Gehrke, that cross-claim was dismissed on Gehrke's motion. *See Cochran v. Gehrke Constr.,* 235 F.Supp.2d 991 (N.D.Iowa 2002).

On September 12, 2003, Gehrke filed the motion for partial summary judgment presently before the court (docket no. 53), which seeks summary judgment on Gehrke's cross-claim for indemnity against National Tank. National Tank resisted the motion on October 8, 2003 (docket no. 55), and Gehrke filed a reply in further support of its motion on October 16, 2003 (docket no. 56). Neither party requested oral arguments on the motion, so the court deems the motion fully submitted on the written briefs and record. *See* N.D. IA. L.R. 56.1(f) ("A request for oral argument must be noted separately in both the caption and the conclusion of the motion or resistance to the motion.").

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that either the claimant or the defending party may move for summary judgment in its favor on all or any part of a claim. *See* FED. R. CIV. P. 56(a) & (b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A case in which the issues involved are primarily questions of law, which Gehrke contends is the case here, at least as to its indemnity claim, "is particularly appropriate for summary judgment." *TeamBank,*

*N.A. v. McClure,* 279 F.3d 614, 617 (8th Cir.2002) (citing *Adams v. Boy Scouts of America–Chickasaw Council,* 271 F.3d 769, 775 (8th Cir.2001)); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Shirley,* 96 F.3d 1108, 1111 (8th Cir.1996) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1315 (8th Cir.1996) (same).

However, National Tank contends that genuine issues of material fact preclude summary judgment in this case. In circumstances where the presence or absence of a genuine factual dispute is the fighting issue on a motion for summary judgment, the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick,* 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.,* are "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

The court will apply these standards to Gehrke's motion for partial summary judg-

ment on its cross-claim for indemnity against National Tank pursuant to the terms of the Subcontract Agreement between these parties.

### B. Arguments Of The Parties

### 1. Gehrke's opening argument

In its motion for partial summary judgment, Gehrke argues that the indemnity provision of its subcontract with National Tank is clear and unequivocal, and therefore enforceable, against National Tank, even to the extent that it seeks indemnity for Gehrke's *own* negligence. Indeed, Gehrke argues that the indemnity provision in the subcontract is identical to the indemnification clause in *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.*, 382 N.W.2d 156 (Iowa 1986), which the Iowa Supreme Court held clearly and unequivocally provided for indemnification even for the indemnitee's own negligence as well as for the negligent acts of others. Gehrke also contends that the present case is factually analogous to *Payne*, because here, as in *Payne*, the general contractor brought and defended against cross-claims involving one of its subcontractors. Consequently, Gehrke contends that it is entitled to judgment as a matter of law that (1) the indemnity provision of the Subcontract Agreement between National Tank and Gehrke is valid and enforceable; (2) National Tank is required to indemnify Gehrke in the amount of any judgment rendered against Gehrke in this action, as well as to pay its costs of defense and expenses; and (3) Gehrke is entitled to its legal fees and disbursement paid or incurred by it to enforce the contractual indemnification provisions of the Subcontract Agreement.

### 2. National Tank's resistance

In its response, National Tank concedes that similar language in an indemnity agreement has previously been construed by the Iowa Supreme Court to be suffi-ciently clear to require the subcontractor to indemnify the general contractor, even if the general contractor was in part at fault for the plaintiff's damages. However, National Tank contends that "[w]hat is lacking in Gehrke's argument, and throughout its motion for summary judgment, is a showing that the factual underpinnings, or basis to show that the specific case fits within the requirements of the indemnity language, are undisputed." National Tank's Brief In Support Of Its Resistance To Gehrke Inc.'s [sic] Motion For Partial Summary Judgment (National Tank's Resistance Brief), 5. Rather, National Tank contends that many of the facts leading to liability of any party, thus triggering any indemnity provision, are genuinely disputed, so that Gehrke's motion for partial summary judgment must be denied.

More specifically, National Tank argues that Gehrke's motion is "premature," because Gehrke has denied negligence and liability in this action. National Tank contends that Gehrke must admit liability in this case to be entitled to indemnity: If there is no liability on the part of Gehrke, National Tank contends, National Tank has nothing to indemnify, under the plain language of the indemnity provision of the Subcontract. National Tank points out that it has also denied negligence and liability in this action, and indemnification is not required until it is found negligent, because the indemnity provision of the Subcontract requires National Tank to be at fault in whole or in part to trigger indemnity to Gehrke. In the alternative, National Tank argues that the parties dispute whether anyone performing work of the subcontract under the direction of National Tank was negligent. Next, National Tank contends that the Iowa Supreme Court has held that an obligation to indemnify requires some relationship between the work done by the subcontractor under

the subcontract and the injury, but no such factual showing has been made here, where Eagle Grove was not working under the direction of National Tank and no action or inaction of National Tank was a proximate cause of the accident that injured Shawn Cochran.

### 3. Gehrke's reply

In reply, Gehrke contends that its own negligence is not a prerequisite for the application of the indemnity clause; rather, Gehrke contends that, under the terms of the indemnity clause, National Tank must indemnify Gehrke for damages occasioned wholly or in part by any negligent act or omission of anyone falling into one of four different categories, regardless of Gehrke's negligence. Those four categories, Gehrke contends, are the following: (1) National Tank; (2) anyone directly or indirectly employed by National Tank; (3) anyone performing the work of the subcontract under the direction of National Tank; or (4) anyone for whose acts "any of them" may be liable in carrying out the provisions of the general contract and of the subcontract. Thus, Gehrke contends that National Tank must indemnify Gehrke for National Tank's negligent acts and omissions and those of Eagle Grove. While Gehrke concedes that its motion for partial summary judgment is "premature" to the extent that there has, as yet, been no finding that Gehrke's losses or damages were occasioned wholly or in part by any negligent act or omission of either Gehrke or National Tank, Gehrke argues that Eagle Grove's undisputed negligence is sufficient to support the relief that Gehrke seeks in its motion for partial summary judgment.

Specifically, Gehrke contends that there is no genuine issue of material fact that National Tank directly or indirectly employed Eagle Grove. Similarly, Gehrke contends that there is no genuine issue of material fact that Eagle Grove was per-

forming work of the subcontract, erection of the tank, under the direction of National Tank, specifically, under the direction of Mr. McDole, at the time of the accident. Gehrke contends that National Tank's "direction" of the work was sufficient, even if National Tank did not "control" every action of Eagle Grove or its employees. Gehrke points out that Gehrke and National Tank agree that Eagle Grove was negligent and a proximate cause of the collapse of the crane. Next, Gehrke contends that, failing any other basis for indemnity, Eagle Grove qualifies as "anyone for whose acts any of them may be liable in carrying out the provisions of the general contract and of the subcontract," because Eagle Grove is a party for whose acts National Tank *may* be liable by virtue of National Tank's general duty to monitor the conditions of the job site. Finally, if findings of negligence are premature, Gehrke asks the court to declare that if National Tank and/or Eagle Grove is found to be negligent, then the indemnity provision requires National Tank to indemnify Gehrke for its losses.

### C. Principles Of Iowa Indemnity Law

#### 1. Contractual indemnity

As the Iowa Supreme Court recently explained, " '[i]ndemnification is a form of restitution,' " which can be "implied by law in tort claims" or "based on contract." *McNally & Nimergood v. Neumann–Kiewit Constructors, Inc.*, 648 N.W.2d 564, 570 (Iowa 2002); *McComas–Lacina Constr. Co. v. Able Constructors*, 641 N.W.2d 841, 844 (Iowa 2002) ("There are several different grounds upon which a claimant may seek indemnity, including express contract."). " '[C]ontractual indemnity is not disfavored and ordinarily will be enforced between the parties according to its terms.' " *McComas–Lacina Constr. Co.*, 641 N.W.2d at 844 (quoting *Pirelli–Armstrong Tire Corp. v. Midwest–Werner*

& *Pfleiderer, Inc.,* 540 N.W.2d 647, 649 (Iowa 1995)).

The Iowa Supreme Court has explained contractual indemnity as follows:

Under a contract for indemnification, "one party (the *indemnitor*) promises to hold another party (the *indemnitee*) harmless for loss or damage of some kind...." II E. Allan Farnsworth, *Farnsworth on Contracts* § 6.3, at 108 (2d ed.1998). The indemnitor "promises to indemnify ... [the] indemnitee against liability of [the] indemnitee to a third person, or against loss resulting from [the] liability." 42 C.J.S. *Indemnity* § 2, at 72 (1991). Generally, no particular language is required to support indemnification, and a written agreement can be established without specifically expressing the obligation as indemnification. *See Jenckes v. Rice,* 119 Iowa 451, 452–53, 93 N.W. 384, 385 (1903); *see also Royal Ins. Co. of Am. v. Whitaker Contracting Corp.,* 242 F.3d 1035, 1041 (11th Cir.2001) (particular language not required as long as intent is clear). An indemnification agreement is created when the words used express an intention by one party to reimburse or hold the other party harmless for any loss, damage, or liability. Robert L. Meyers III & Debra A. Perelman, Symposium, *Risk Allocation Through Indemnity Obligations in Construction Contracts,* 40 S.C. L.Rev. 989, 990 (1989) [hereinafter Meyers & Perelman]. Intent is the controlling consideration. *See Bunce v. Skyline Harvestore Sys., Inc.,* 348 N.W.2d 248, 250 (Iowa 1984); Meyers & Perelman, 40 S.C. L.Rev. at 989. Indemnification is commonly utilized in construction contracts and rental agreements, as well as many other relationships where one party engages in an act at the request of the other or for the benefit of the other, or allows a party to use property belonging to the other. See Meyers & Perelman, 40 S.C. L.Rev.

at 990–91; 42 C.J.S. *Indemnity* §§ 1, 2, at 72.

*McNally & Nimergood,* 648 N.W.2d at 570–71.

■ A contract for indemnification is generally subject to the same rules of formation, validity, and construction as other contracts. *See id.* at 571; *Martin & Pitz Assocs, Inc. v. Hudson Constr. Servs., Inc.,* 602 N.W.2d 805, 808 (Iowa 1999). As to the court's task of interpreting and construing an indemnity provision, the Iowa Supreme Court has explained that the issue should be framed in terms of resolution of two separate questions: " '(1) for whose negligent acts causing damage is indemnity promised? and (2) what is the scope of the area in which indemnity is available?' " *Modern Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc.,* 581 N.W.2d 616, 624 (Iowa 1998) (quoting *R.E.M. IV, Inc. v. Robert F. Ackermann & Assocs., Inc.,* 313 N.W.2d 431, 433 (Minn. 1981)). A general principle applicable to the second question is that "an obligation to indemnify requires 'some relationship between the work done by the subcontractor under the subcontract and the injury.' " *Id.* at 625 (quoting *Campbell v. Mid-America Constr. Co.,* 567 N.W.2d 667, 670 (Iowa Ct.App.1997)).

### 2. Indemnity for the indemnitee's own negligence

■ Although indemnity contracts are generally subject to the same rules of construction as other contracts, Iowa courts have crafted a special rule of construction for indemnification contracts when, as here, such contracts purport to relieve the indemnitee from liability for its own negligence. *McNally & Nimergood,* 648 N.W.2d at 571; *Martin & Pitz,* 602 N.W.2d at 809 ("[S]ome unique rules apply in the construction of indemnity contracts," for example, when a party seeks

indemnity "for its own negligence"). "This rule provides that indemnification contracts will not be construed to permit an indemnitee to recover for its own negligence unless the intention of the parties is clearly and unambiguously expressed." *Id.; McComas–Lacina Constr. Co.,* 641 N.W.2d at 845; *Martin & Pitz,* 602 N.W.2d at 809 ("[A] party will not be indemnified for its own negligence 'unless the agreement provides for it in clear and unequivocal language.'") (quoting *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.,* 382 N.W.2d 156, 160 (Iowa 1986), in turn quoting Annot., 68 A.L.R.3d at 68–69); *Herter v. Ringland–Johnson–Crowley Co.,* 492 N.W.2d 672, 674 (Iowa 1992) ("The enforceability of such contracts [purporting to relieve the indemnitee of its own negligence] turns on whether the indemnifying language is 'clear and unequivocal.'") (also quoting *Payne*). "Thus, indemnification contracts claimed to contain these provisions are construed more strictly than other contracts." *Id.*

However, the Iowa Supreme Court has recently made clear that express language relieving the indemnitee of its own negligence is not required, "'if the words of the agreement clearly import that intent.'" *McNally & Nimergood,* 648 N.W.2d at 572 (quoting *Herter,* 492 N.W.2d at 674). The Iowa Supreme Court explained that "[s]ince the time we first recognized our rule of construction against indemnification for the indemnitee's own negligence unless the intention to do so is clearly and unequivocally expressed, we have tended to apply the rule by distinguishing contracts permitting indemnification for the indemnitee's own negligence from those that do not by looking for specific language in the contract addressing the fault or negligence of the indemnitee." *Id.* at 571. Thus, the court had "permitted indemnity based on the indemnitee's own negligence when the indemnitee's own

negligence is specifically addressed in the indemnification agreement," but had deemed that "general indemnity language in a contract [is] insufficient to impose indemnity for the indemnitee's own negligence." *Id.* at 572.

In *McNally & Nimergood,* the Iowa Supreme Court explained that this distinction "was never intended to create a fixed limitation on our rule of construction." *Id.* Rather, the court held, "our rule of construction does not actually require the contract to specifically mention the indemnitee's negligence or fault as long as this intention is otherwise clearly expressed by other words of the agreement." *Id.* With this view of the rule, "our tendency to find general, all-inclusive indemnification contracts to be insufficient to create indemnity for an indemnitee's own negligence is only a guideline, not a strict principle." *Id.* (further explaining that it is *not* the rule in Iowa that the contract would need to contain a specific reference to the indemnitee's own negligence before such indemnification would be permitted). The current formulation of the rule in Iowa for contracts purporting to provide for indemnity for an indemnitee's own negligence, therefore, is as follows:

> In each case, the intent of the parties will control as revealed by the language of the agreement, and we should not impose any special requirement that specific language be used to express that intent. Thus, even broad indemnity language may reveal an intent to indemnify an indemnitee for its own negligence.

*McNally & Nimergood,* 648 N.W.2d at 572.

### 3. Roles of court and jury

■ "The question of whether [a party is] liable for indemnity is a matter for the court to determine as a matter of law." *Martin & Pitz v. Hudson Constr. Servs.,*

*Inc.*, 602 N.W.2d 805, 808 (Iowa 1999). Thus, liability for indemnity may be one of those questions that "is particularly appropriate for summary judgment." *TeamBank, N.A.*, 279 F.3d at 617 (questions of law are particularly appropriate for summary judgment) (citing *Adams*, 271 F.3d at 775); *Shirley*, 96 F.3d at 1111 ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Aucutt*, 85 F.3d at 1315 (same).

Indeed, not long ago, in *Modern Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc.*, 581 N.W.2d 616 (Iowa 1998), the Iowa Supreme Court explained in some detail the respective roles of the court and the jury in determination of indemnity issues—a matter of some importance in this case, where the parties differ on whether the question of National Tank's indemnity to Gehrke can be resolved as a matter of law or must instead await determinations of disputed fact by a jury. Thus, *Modern Piping* may provide particular insight on what questions can properly be decided as a matter of law on a motion for partial summary judgment in this case, and which may be subject to genuine issues of material fact precluding summary judgment on Gehrke's indemnity claim.

In *Modern Piping*, as in other cases cited above, the Iowa Supreme Court first explained that courts "review the indemnity provisions of [a] contract in accordance with the same principles [courts] utilize in reviewing other contracts." *Modern Piping, Inc.*, 581 N.W.2d at 623; *see also Campbell v. Mid–America Constr. Co. of Iowa*, 567 N.W.2d 667, 669 (Iowa Ct.App. 1997) ("We begin with the principle that indemnity agreements are held to the same standards of construction as other contracts."). Moreover, "[r]eview of a contract typically involves both interpretation and construction," where "[i]nterpretation of a contract requires a court to determine the meaning of contractual words," *id.*, and "construction" is the "legal effect of a contract." *Campbell*, 567 N.W.2d at 669. Iowa courts have recognized that construction is "always a matter of law to be decided by the court." *See, e.g., Campbell*, 567 N.W.2d at 669–70. Similarly, the court in *Modern Piping* explained that "[i]nterpretation is reviewed by the court as a legal issue unless it is dependent on extrinsic evidence." *Modern Piping, Inc.*, 581 N.W.2d at 623; *accord Campbell*, 567 N.W.2d at 669–70 ("interpretation" or "meaning of contractual words" is "always a matter of law to be decided by the court ... unless it depends on extrinsic evidence or a choice among reasonable inferences from extrinsic evidence"). Where there is no extrinsic evidence to consider on the meaning of the contractual language, however, the Iowa Supreme Court explained in *Modern Piping* that "the issue of the contract's interpretation should ... remai[n] with the court as well." *Modern Piping, Inc.*, 581 N.W.2d at 623. Thus,

> At most, the district court should ... submi[t] special interrogatories on any relevant issues of fact. The court could then ... utiliz[e] the jury's findings to determine whether [the party claiming indemnity] had a right to indemnity. It [i]s for the district court to determine the legal effect of the indemnity clause based on factual findings of the jury, if necessary to that determination, and to ultimately determine whether [the party claiming indemnity] [i]s entitled to indemnity from [the alleged indemnitor]. It [i]s error for the district court to submit those issues to the jury....

*Modern Piping, Inc.*, 581 N.W.2d at 623–24 (internal citation omitted).

### D. Interpretation And Construction Of The Indemnity Agreement

■■ With the principles discussed in the preceding section in mind, the court

turns to interpretation and construction of the indemnity provision at issue in the Subcontract Agreement between Gehrke and National Tank. Again, unless the parties demonstrate that the meaning of the contract somehow depends upon extrinsic evidence, the meaning of the indemnity provision is a question of law particularly amenable to determination on a motion for summary judgment. *See Modern Piping, Inc.*, 581 N.W.2d at 623; *see also Team-Bank, N.A.*, 279 F.3d at 617 (questions of law are particularly appropriate for summary judgment) (citing *Adams*, 271 F.3d at 775); *Shirley*, 96 F.3d at 1111 ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); *Aucutt*, 85 F.3d at 1315 (same). The court will frame its interpretation and construction in terms of the questions posed for that purpose in *Modern Piping*. *See Modern Piping, Inc.*, 581 N.W.2d at 624 (quoting *R.E.M. IV, Inc.*, 313 N.W.2d at 433).

### 1. Entities for whose acts indemnity is promised

Under *Modern Piping*, the first question that this court must consider in interpreting and construing the indemnity provision at issue is, " '[F]or whose negligent acts causing damage is indemnity promised?' " *Modern Piping, Inc.*, 581 N.W.2d at 624 (quoting *R.E.M. IV, Inc.*, 313 N.W.2d at 433). Once again, the indemnity provision states the following:

> The Subcontractor [National Tank] agrees to indemnify and save harmless the Contractor [Gehrke] from any and all loss or damage ... occasioned wholly or in part by any negligent act or omission of [1] the subcontractor [National Tank] or [2] that of anyone directly or indirectly employed by them or [3] performing the work of this Subcontract under the direction of the Subcontractor [National Tank] or [4] anyone for whose acts any of them may be liable in carry-

ing out the provisions of the general contract and of this Subcontract *regardless of whether or not it is caused in part by a party indemnified hereunder.*

*See* Gehrke's Appendix at 72 (annotations and emphasis added). As indicated by the numbers inserted in the quoted provision above, the court finds that, as a matter of law, the indemnity provision expressly identifies four categories of entities for whose negligent acts causing damage indemnity is promised: (1) "the subcontractor," here National Tank; (2) "anyone directly or indirectly employed by [National Tank]"; (3) anyone "performing the work of this Subcontract under the direction of [National Tank]"; and (4) "anyone for whose acts any of them [*i.e.*, the parties to the contract, either National Tank or Gehrke] may be liable." *See id.* This meaning of the contractual words is plain on the face of the document; neither party contends that this much of the meaning of the provision depends upon extrinsic evidence. *See Modern Piping, Inc.*, 581 N.W.2d at 623 (where there is no extrinsic evidence to consider on the meaning of the contractual language, "the issue of the contract's interpretation should ... remai[n] with the court"); *accord Campbell*, 567 N.W.2d at 669–70 ("interpretation" or "meaning of contractual words" is "always a matter of law to be decided by the court ... unless it depends on extrinsic evidence or a choice among reasonable inferences from extrinsic evidence").

The first category of entities for whose negligent acts causing damage indemnity is promised is clear enough: The "subcontractor" under the agreement is National Tank. There is likewise only one possible candidate for the second category, "anyone directly or indirectly employed by [National Tank]," and that is Eagle Grove. Indeed, while National Tank disputes Gehrke's characterization that National Tank or McDole "hired" Eagle Grove, Na-

tional Tank itself avers that National Tank entered into a subcontract with Eagle Grove to do crane work on the New Providence project. Thus, as a matter of law, Eagle Grove is an entity in the second category of entities for whose negligent acts causing damage National Tank has promised to provide indemnity to Gehrke, *if*, indeed, Eagle Grove's acts caused any damage, which is a matter that the court will address below. Eagle Grove is, likewise, the only possible candidate for the third category, anyone "performing the work of this Subcontract under the direction of [National Tank]." Although National Tank disputes whether it was "directing" the work of Eagle Grove, within the meaning of the *third* category of entities, the court finds that that dispute is not one "that might affect the outcome of the suit under the governing law," and thus "properly preclude the entry of summary judgment." *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394. This is so, in light of the fact that National Tank has, as a matter of law, promised to indemnify Gehrke for any negligence of Eagle Grove as an entity in the *second* category. Finally, as a matter of law, the only entities that could fall into the fourth category—"anyone for whose acts any of them [*i.e.*, the parties to the contract, either National Tank or Gehrke] may be liable"— are Gehrke, National Tank, and Eagle Grove, as National Tank's subcontractor. Thus, the fourth category presents the question of whether the indemnity provision properly imposes indemnity for Gehrke's own negligence.

Gehrke contends that it is, indeed, an entity for whose negligent acts National Tank has promised to provide indemnity. Consequently, the court must determine whether the provision imposes such indemnity for the indemnitee's own negligence with sufficient clarity. *McNally & Nimergood*, 648 N.W.2d at 571 (under Iowa law,

"indemnification contracts will not be construed to permit an indemnitee to recover for its own negligence unless the intention of the parties is clearly and unambiguously expressed"); *McComas–Lacina Constr. Co.*, 641 N.W.2d at 845 (same); *Martin & Pitz*, 602 N.W.2d at 809 ("[A] party will not be indemnified for its own negligence 'unless the agreement provides for it in "clear and unequivocal" language.' ") (quoting *Payne Plumbing & Heating Co.*, 382 N.W.2d at 160, in turn quoting Annot., 68 A.L.R.3d at 68–69); *Herter*, 492 N.W.2d at 674 ("The enforceability of such contracts [purporting to relieve the indemnitee of its own negligence] turns on whether the indemnifying language is 'clear and unequivocal.' ") (also quoting *Payne*). The court finds that the present provision is sufficiently clear and unequivocal to establish the parties' intent that National Tank would indemnify Gehrke even for Gehrke's own negligence for at least three reasons.

First, the indemnity provision expressly—and clearly and unequivocally—provides that "[National Tank] agrees to indemnify and save harmless the Contractor [Gehrke] from any and all loss or damage *... occasioned wholly or in part by any negligent act or omission of ... anyone for whose acts any of them may be liable* in carrying out the provisions of the general contract and of this Subcontract." Gehrke's Appendix at 72 (emphasis added). Thus, the indemnity provision expressly provides that it applies even where Gehrke, as "anyone for whose acts any of them may be liable," caused the damage in question "*wholly* or in part" by its own negligence. Second, the scope of the fourth category is clarified by language stating that the duty to indemnify is "regardless of whether or not [the loss or damage] is caused in part by a party indemnified hereunder." Gehrke's Appendix at 72. The only party "indemnified hereunder" is Gehrke, and this clause makes

plain that Gehrke's negligence in causing part of the damage would not excuse National Tank from indemnifying for any damage also caused in part by either National Tank or Eagle Grove. Thus, the fourth category clearly and unequivocally imposes a duty on the part of National Tank to indemnify Gehrke for damage caused by Gehrke's own negligence. Third, as Gehrke points out, in *Payne Plumbing & Heating Co., Inc. v. Bob McKiness Excavating & Grading, Inc.,* 382 N.W.2d 156, 160 (Iowa 1986), the Iowa Supreme Court stated, "a party may contract for indemnification of damages to which it contributed, if the agreement clearly provides for it," then held that language identical to that at issue here "did that." *Payne,* 382 N.W.2d at 160; *but see Martin & Pitz Associates, Inc. v. Hudson Constr. Servs., Inc.,* 602 N.W.2d

805, 809 (Iowa 1999) (construing a similar indemnity provision as failing to provide indemnification for a claim caused *solely* by the acts of an indemnitee).[1] Indeed, National Tank does not appear to dispute that the indemnity provision clearly and unequivocally provides for indemnity even for Gehrke's own negligence. Rather, National Tank argues that the factual prerequisites for indemnity—including Gehrke's negligence—remain genuinely disputed.

In short, under the Gehrke–National Tank Subcontract Agreement, the entities " 'for whose negligent acts causing damage ... indemnity [is] promised,' " *see Modern Piping, Inc.,* 581 N.W.2d at 624 (quoting *R.E.M. IV, Inc.,* 313 N.W.2d at 433), are National Tank (as the first category entity), Eagle Grove (as a second category entity), and Gehrke (as a fourth category entity). Moreover, National Tank prom-

---

**1.** In *Martin & Pitz Associates, Inc. v. Hudson Construction Services, Inc.,* 602 N.W.2d 805 (Iowa 1999), the court examined a similar indemnity provision, which stated the following:

> [T]he *Contractor shall indemnify and hold harmless* the Owner [University], Architect [MPA], Architect's consultants, and agents and employees ... *from and against claims, damages, losses and expenses ... but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor,* anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

*Martin & Pitz,* 602 N.W.2d at 806 (with emphasis added by that court). The court focused on the clause providing for indemnification "regardless of whether or not such claim is caused *in part* by a party indemnified hereunder," *see id.* at 809 (emphasis in the original), which is also present in the Gehrke–National Tank Subcontract Agreement. *See* Gehrke's Appendix at 72. This language, the court concluded in *Martin & Pitz* "did not provide indemnification for a claim caused solely by the acts of an indemnitee." *Martin & Pitz,* 602 N.W.2d at 809.

This court, however, must respectfully disagree: The interpretation by the Iowa Supreme Court in *Martin & Pitz* ignores the portion of the indemnity clause in that case expressly stating that indemnity is for damages "to the extent caused *in whole or in part* by negligent acts or omissions of" listed entities, including "anyone for whose acts they may be liable." *See id.* at 806 (emphasis added). Similarly, in this case, the indemnity provision provides that National Tank shall indemnify Gehrke for "any and all loss or damage ... *occasioned wholly* or in part by any negligent act or omission of [four categories of entities] regardless of whether or not [the damage] is caused in part by a party indemnified hereunder." *See* Gehrke's Appendix at 72 (emphasis added). In light of the plain language of the provision, taken as a whole, the "regardless" clause cannot be read to *limit* indemnity by excluding indemnity for damage caused *solely* by the indemnitee. Rather, as explained in the body of this decision, that language makes clear that proof that the indemnitee was "in part" liable for damage would not excuse the indemnitor from providing indemnity for any damage also caused in part by the indemnitor or another entity for whose negligent acts indemnity is promised.

ised indemnity for the negligence of each of these entities *regardless* of the negligence of any other entity. This is apparent, because the plain language of the indemnity provision expressly provides for indemnity for these categories of entities in the disjunctive, so that an independent duty of indemnity arises as to each of them. Therefore, National Tank's contention that Gehrke must first be shown to be liable or admit liability before any indemnity is triggered is simply incorrect, as is National Tank's contention that it must be found to be liable or admit to liability before indemnity is triggered. Rather, as a matter of law, under the express terms of the indemnity provision, National Tank must indemnify Gehrke if National Tank *or* Eagle Grove *or* Gehrke is found to be negligent.

### 2. Scope of the area in which indemnity is available

The second question for interpretation and construction of the indemnity provision under *Modern Piping* is, " '[W]hat is the scope of the area in which indemnity is available?' " *Modern Piping, Inc.*, 581 N.W.2d at 624 (quoting *R.E.M. IV, Inc.*, 313 N.W.2d at 433). As mentioned above, a general principle applicable to this second question is that "an obligation to indemnify requires 'some relationship between the work done by the subcontractor under the subcontract and the injury.' " *Id.* at 625 (quoting *Campbell*, 567 N.W.2d at 670). In this case, the indemnity provision expressly identifies the "scope of the area in which indemnity is available" as "any and all loss or damage . . . occasioned wholly or in part by any negligent act or omission of [the listed entities] in carrying out the provisions of the general contract and of this Subcontract." *See* Gehrke's Appendix at 72. Because the indemnity provision expressly provides for indemnity for negligent acts in "carrying out the provisions of the general contract and of this Subcontract," the indemnity provision expressly provides for indemnity with "some relationship between the work done by the subcontractor under the subcontract and the injury." *See Modern Piping, Inc.*, 581 N.W.2d at 625.

However, National Tank argues that the "relationship" requirement has not been shown—and, indeed, is subject to genuine issues of material fact—because Eagle Grove was not working under the "direction" of National Tank and no action or inaction of National Tank was the proximate cause of the accident. *See* National Tank's Resistance Brief at 6. National Tank also contends that there are no direct allegations of negligence against National Tank in Cochran's Complaint, only allegations of a general duty to monitor conditions on the job site, which is not within the "scope of work" provision of the Subcontract. National Tank's argument, however, tries to prove too much.

Section 2 of the Subcontract Agreement describes the work to be performed by National Tank as preparing and erecting the tank, sand blasting and painting the tank, modifying the control system, sand blasting and painting an existing tank, and furnishing new 30" fill pipe. *See* Gehrke's Appendix at 72. It is undisputed that National Tank subcontracted with Eagle Grove to assist with erecting the tank, which was expressly part of the work of the subcontract, and Cochran's injury was allegedly caused by the negligent carrying out of this work under the subcontract. Thus, the required "relationship" is present here.

Moreover, National Tank cannot escape indemnity simply by subcontracting the work to be done under its own subcontract to another. First, as explained above, as a matter of law. Eagle Grove is a party for whose negligence National Tank promised to provide indemnity as an entity "directly

or indirectly employed by [National Tank]," *i.e.,* as an entity within the second category of entities for whose negligence National Tank promised to provide indemnity. Thus, whether or not National Tank "directed" Eagle Grove, which would have placed Eagle Grove in the third category of entities for whose negligence National Tank promised to provide indemnity, is irrelevant. Second, Section 5 of the Subcontract Agreement between Gehrke and National Tank provides that "[t]he Subcontractor shall be responsible for performance of work by his employees, agents agents [sic] or his Subcontractor, and Subcontractor agrees to bind his Subcontractors to all provisions of this Agreement." Gehrke's Appendix at 72; *see also Eischeid v. Dover Constr., Inc.,* 217 F.R.D. 448, 465 (N.D.Iowa 2003) (where a party retains responsibility for work, that party is subject to a nondelegable duty to exercise reasonable care to prevent a subcontractor from doing even details of the work in an unreasonably dangerous manner). Thus, National Tank remained responsible for performance of the work of the subcontract, even after subcontracting it to Eagle Grove, and the indemnity provision thus has the required "relationship between the work done by the subcontractor [National Tank] under the subcontract and the injury," *even if* Eagle Grove's conduct was the sole proximate cause of any injury to Cochran. *See Modern Piping, Inc.,* 581 N.W.2d at 625. National Tank's attempts to analogize this case to one in which the only involvement between the subcontractor and the injury was unauthorized use of the subcontractor's equipment, or to a case in which the injury was caused by past negligent acts of the architect who designed the project, rather than conduct of the subcontract, *see* National Tank's Resistance Brief at 6–7 (citing *Modern Piping,* 581 N.W.2d at 625), do not bear scrutiny, because Cochran's injury arises from National Tank's own conduct under the subcontract.

The court concludes that, as a matter of law, " 'the scope of the area in which indemnity is available,' " *see Modern Piping, Inc.,* 581 N.W.2d at 624 (second question framing interpretation and construction of an indemnity provision) (quoting *R.E.M. IV, Inc.,* 313 N.W.2d at 433), is that National Tank must provide indemnity to Gehrke for negligence of National Tank *or* Eagle Grove *or* Gehrke in "carrying out the provisions of the general contract and of [the Gehrke–National Tank] Subcontract." A subsidiary question regarding the scope of the indemnity provision is, for what damages, costs, or expenses must National Tank indemnify Gehrke? The indemnity provision expressly identifies "any and all loss or damage (including, without limiting the generality of the foregoing, legal fees, and disbursements paid or incurred by the Contractor to enforce the provisions of this paragraph), occasioned wholly or in part by any negligent act or omission of [a listed entity]." Gehrke's Appendix at 72. Thus, if an identified entity is found negligent, National Tank must indemnify Gehrke for the damages caused by that party's negligence and Gehrke's legal fees in defending this action, and must also indemnity Gehrke for any disbursements paid or incurred by Gehrke to enforce the indemnity provision, including the costs and fees attributable to the present motion for partial summary judgment.

### 3. Summary

From this process of interpretation and construction of the indemnity provision, the court concludes, as a matter of law, as follows: (1) the indemnity provision is valid and enforceable, even to the extent that it imposes upon National Tank a duty to indemnify Gehrke for Gehrke's own negli-

gence, because the indemnity provision clearly and unequivocally expresses that intent; (2) the indemnity provision expressly provides for National Tank to indemnify Gehrke for negligent acts causing damage by National Tank *or* Eagle Grove, as an entity employed directly or indirectly by National Tank, *i.e.*, whether or not National Tank "directed" the work by Eagle Grove, *or* Gehrke; and (3) National Tank must indemnify Gehrke for negligence of Gehrke *or* National Tank *or* Eagle Grove in carrying out the provisions of the general contract and of the Gehrke–National Tank Subcontract, as well as for Gehrke's legal fees in defending this action, and any disbursements paid or incurred by Gehrke to enforce the indemnity provision, including the costs and fees attributable to the present motion for partial summary judgment. Gehrke is, therefore, entitled to partial summary judgment in its favor on these legal questions of interpretation and construction of the indemnity agreement.

### E. National Tank's Assertion Of Factual Disputes

■ National Tank nevertheless contends that Gehrke's motion for partial summary judgment on its indemnity *claim* is "premature," because there are genuine issues of material fact as to whether or not any party for whose negligence National Tank has promised to indemnify Gehrke was actually negligent. In other words, National Tank contends that the indemnity provision has not been "triggered" by a determination of any proper entity's negligence, and that such "triggers" are subject to genuine issues of material fact. The court agrees that, representations of Gehrke and National Tank to the contrary, there remain genuine issues of material fact as to whether *any* potentially liable party—National Tank *or* Eagle Grove *or* Gehrke—was indeed negligent and whether that party's negligence caused Shawn Cochran's injuries.

In light of *Modern Piping*, this court "should ... submi[t] special interrogatories on any relevant issues of fact, ... then ... utiliz[e] the jury's findings to determine whether [the party claiming indemnity] had a right to indemnity." *Modern Piping, Inc.*, 581 N.W.2d at 623–24. "It [i]s for the district court to determine the legal effect of the indemnity clause based on factual findings of the jury, if necessary to that determination, and to ultimately determine whether [Gehrke] [i]s entitled to indemnity from [National Tank]." *Modern Piping, Inc.*, 581 N.W.2d at 623–24 (internal citation omitted). Although the court has established the legal framework for its ultimate determination of the indemnity issue, above, and has even determined what the legal effect of the indemnity clause will be, *if* the jury makes certain findings concerning negligence, the ultimate question of whether or not Gehrke is entitled to indemnity from National Tank must await those jury findings. To that extent, Gehrke's motion for partial summary judgment must be denied as premature.

## III. CONCLUSION

The court finds that Gehrke's cross-claim for indemnity from National Tank is ripe for summary adjudication as to issues of interpretation and construction of the indemnity provision in the Subcontract Agreement between those parties. In light of the court's interpretation and construction of the indemnity provision, Gehrke's September 12, 2003, motion for partial summary judgment (docket no. 53) is **granted** as follows:

1. The indemnity provision of the Subcontract Agreement between Gehrke and National Tank is valid and enforceable, even to the extent that it imposes upon National Tank a duty to indemnify Gehrke for Gehrke's own negligence, because the

indemnity provision clearly and unequivocally expresses that intent.

2. The indemnity provision expressly provides for National Tank to indemnify Gehrke for negligent acts causing damage by National Tank *or* Eagle Grove, as an entity employed directly or indirectly by National Tank, *i.e.*, whether or not National Tank "directed" the work by Eagle Grove, *or* Gehrke.

3. National Tank must indemnify Gehrke for negligence of Gehrke *or* National Tank *or* Eagle Grove in carrying out the provisions of the general contract and of the Gehrke–National Tank Subcontract, as well as for Gehrke's legal fees in defending this action, and any disbursements paid or incurred by Gehrke to enforce the indemnity provision, including the costs and fees attributable to the present motion for partial summary judgment, *if* a jury determines that National Tank *or* Eagle Grove *or* Gehrke was negligent and that such negligence was a proximate cause of Shawn Cochran's damage.

However, Gehrke's September 12, 2003, motion for partial summary judgment (docket no. 53) is **denied** as to the ultimate question of whether or not Gehrke is entitled to indemnity from National Tank, because that question must await jury findings of negligence and proximate cause and the court's application of the indemnity provision, as interpreted and construed above, to those findings.

**IT IS SO ORDERED.**